**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| ACTION NISSAN, INC. d/b/a UNIVERSAL HYUNDAI and WILLIAM NERO,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>HYUNDAI MOTOR AMERICA and GENESIS MOTOR AMERICA.<br><br>　　　　　Defendants. | 6:18-cv-380-WWB-EJK |

**HYUNDAI MOTOR AMERICA'S RENEWED MOTION FOR JUDGMENT**
**AS A MATTER OF LAW AND MOTION FOR A NEW TRIAL**

Ryan L. Ford (admitted *pro hac vice*)
Antonio M. Elias (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth St. NW
Washington, D.C. 20004
Tel.: (202) 637-5600
ryan.ford@hoganlovells.com
antonio.elias@hoganlovells.com

Carl J. Chiappa (admitted *pro hac vice*)
John J. Sullivan (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
390 Madison Ave.
New York, NY 10017
Tel.: (212) 918 3000
carl.chiappa@hoganlovells.com
john.sullivan@hoganlovells.com

James Andrew Bertron, Jr.
Florida Bar No. 0982849
NELSON MULLINS RILEY &
SCARBOROUGH LLP
215 South Monroe Street, Suite 400
Tallahassee, FL 32301
Tel.: (850) 907-2507
andy.bertron@nelsonmullins.com

*Counsel for Hyundai Motor America*

Pursuant to Federal Rules of Civil Procedure 50 and 59, Defendant Hyundai Motor America ("HMA") moves for judgment as a matter of law, or in the alternative for a new trial as to Plaintiffs' claims against HMA that were tried to a jury.  Judgment on these claims against HMA was entered on October 19, 2021.  ECF 314.

First, judgment as a matter of law is warranted on all claims.  Post-verdict, courts apply the law to the facts actually proved at trial.  Careful application of the law to the record in this case forecloses recovery for breach of contract, anticipatory breach of contract, and breach of the covenant of good faith and fair dealing for the same threshold reason:  In 2009, HMA and Plaintiffs agreed that HMA would give Plaintiff Nero a right of first refusal if certain, specific circumstances came to pass, and the trial record shows that those circumstances never did.  Specifically, Section 10 of HMA and Plaintiffs' 2009 Settlement Agreement laid out three preconditions that, if present together, would obligate HMA to offer Nero a right of first refusal: (1) if Hyundai Motor Corporation ("HMC") established a new luxury line-make; (2) HMA had rights of distribution to that new luxury line-make; and (3) there were "open points" in eight specific Florida counties.  Pls.' Ex. 1 at 4.  The plain language of the Agreement, and common sense, make clear that all three preconditions had to exist at the same time.  The trial record shows that never happened.  Because all of Plaintiffs' claims tried to the jury depended on HMA breaching Nero's right of first refusal, no reasonable jury could have found for Plaintiffs on any claim.

Second, a new trial is warranted on all claims.  HMA's presentation of its defense was prejudicially harmed by a number of errors relating to the evidentiary record and to the jury instructions.  The Court erred before trial in granting summary judgment to Plaintiffs on HMA's affirmative defense of impossibility.  The factual record as to the

1

defense was disputed in multiple ways, which made summary judgment improper on this issue of fact. At trial, the Court then excluded evidence about actions taken by the Florida Department of Highway Safety and Motor Vehicles ("the Department") and other state regulators on the basis that the Court had granted summary judgment on the impossibility affirmative defense. But this evidence had relevance beyond that affirmative defense to issues that remained in dispute at trial. It was critical proof supporting HMA's position that the Company never had an obligation to offer Nero a right of first refusal: As a result of the actions taken by the Department and other states' regulators, such as Texas's, no open point existed at a time when HMA also had distribution rights to a new luxury line-make. Because the jury was unable to hear relevant evidence that was crucial to HMA's defense, the Court has "no alternative but to require a new trial." *United States v. Ethridge*, 948 F.2d 1215, 1218 (11th Cir. 1991).

In addition, the Court made two prejudicial errors in instructing the jury—first by instructing the jury to ignore HMA's arguments and evidence that, as a result of licensing issues, HMA never had a duty to extend a right of first refusal to Nero, and second, by refusing to instruct the jury that the three preconditions needed to exist simultaneously for HMA to owe Nero a right of first refusal. As instructed, the jury was told to disregard evidence relevant to HMA's defense, and Plaintiffs' counsel was able to mislead the jury by arguing that the three preconditions did not need to exist at the same time to find in their favor. That runs counter to basic black letter law on jury instructions: jury instructions must not have a tendency to confuse or mislead the jury with respect to the applicable principles of law that should guide their decision. Because the jury instructions did not properly guide the jury in its deliberations, the Court should remedy that error through a

2

new trial with a properly instructed jury.  *United States v. AseraCare, Inc.*, 938 F.3d 1278, 1301 (11th Cir. 2019) (affirming grant of new trial based on error in jury charge).

The Court also erred in its rulings at trial that prevented HMA from presenting evidence about the contract's meaning.  As with the exclusion of relevant evidence about state regulators, this exclusion of relevant testimony likewise prejudiced HMA's ability to present its case and warrants a new trial that includes this evidence.

Finally, the jury's award of $16 million in damages was against the great weight of the evidence.  Florida law is clear that damages for breach of contract must be measured as of the date of the breach.  *See, e.g.*, *Haddad v. Rav Bahamas, Ltd.*, 589 F. Supp. 2d 1302, 1307 & n.4 (S.D. Fla. 2008).  Under Plaintiffs' theory, the breach did not occur until January 2019.  There was no evidence at trial that Nero's damages were worth $16 million as of January 2019.  As a result, the verdict is against the clear weight of the evidence, and a new trial should be ordered to determine the proper measure of damages.

## BACKGROUND

As a result of an earlier dispute, HMA and Plaintiffs entered into a settlement agreement in 2009.  In Section 10 of that agreement, HMA agreed Nero would have "a right of first refusal to be appointed as a dealer for two (2) open points for any new luxury motor vehicle line-make, if any, established by Hyundai Motor Corporation . . . and for which HMA or a subsidiary or division of HMA . . . is granted the rights of distribution in the United States."  Pls.' Ex. 1 at 4.  The right of first refusal covered a specific eight county area.  *Id.*  The plain text of Section 10 therefore sets out three preconditions to Nero's right of first refusal: (1) HMA must establish a new luxury line-make; (2) HMA (or a subsidiary) must have rights of distribution to that line-make; and (3) there must be open

points for that new luxury line-make in the eight county area.  *See id.*; ECF 303 at 11-13. HMA's position since this case was filed has been that it was never obligated to offer Nero a right of first refusal because the precondition terms never all existed together.

HMA began distributing Hyundai models called "Genesis" in 2008 through existing Hyundai dealers.  In January 2018, HMA initially announced its intent to turn Genesis into a separate luxury line-make that would be distributed to a distinct and much smaller dealer network by Genesis Motor America ("GMA").  *See* Pls.' Ex. 3.  When GMA applied to the Department to do just that, the Department ruled that it would only approve a license for a Genesis "line-make" if all existing Hyundai dealers were offered the right to continue selling the Genesis line-make at their existing locations.  Pls.' Ex. 20.  As a result of directives from other state regulators and indications from the Department that it would deny GMA's application, HMA retreated in May 2018 from its initially announced plan. Defs.' Ex. 25.  Instead of having the small, select number of luxury Genesis dealerships that HMA had initially described, Defendants had to provide the opportunity for every existing Hyundai dealer to also operate as a Genesis dealer—which was many dozen more dealers in Florida than a luxury car company would want or need.  Pls.' Ex. 20; Tr. Vol. V at 44:8-13; 47:1-20.  In October 2018, the Department issued GMA a distributor license and, effective January 3, 2019, the Department licensed dealers in Florida to sell the newly recognized Genesis line-make.  Defs.' Ex. 34.

At no point after GMA received its license to distribute the new Genesis line-make did Defendants desire to add an additional dealership that would sell that new line-make. In other words, even assuming, as Plaintiffs argued, that the original January 2018 announcement or the subsequent March 2018 "initial markets" letter indicated actual

"open points" (rather than an intent to create open points, as HMA argued), there were no open points at any point in time when Genesis was its own brand of vehicle with distribution rights in the United States.  The core fact at the heart of HMA's defense is that the Department forced Defendants to offer all existing Florida Hyundai dealers, at the exact same time, the right to sell the new Genesis line-make at their existing locations.

In addition to playing a role in its merits defense that no contractual right of first refusal existed, the licensing process evidence supported a separate defense for HMA— an impossibility affirmative defense.  The Court ruled at summary judgment that HMA could not offer an impossibility affirmative defense at trial.  ECF 197 at 16-19.  Eliminating the affirmative defense as a matter of law meant that if Plaintiffs proved all three preconditions existed at the same time and thus obligated HMA to offer Nero a right of first refusal to new dealerships for the luxury line-make, HMA would not be able to invoke the impossibility doctrine to avoid liability for failing to do so.  The summary judgment ruling did not mean that HMA could not introduce evidence at trial that was relevant to showing Nero's case failed as to the existence of the three preconditions in the first place.

Before trial, Plaintiffs sought to expand the Court's summary judgment order and exclude evidence related to the Department because that evidence "contemplates or relies on the legal impossibility of performance by Defendants."  ECF 219 at 5.  In response, Defendants explained that the Department's actions were independently relevant to two separate issues: first, "whether the conditions precedent to Nero's [right of first refusal] ever occurred," and second, to the affirmative defense of impossibility.  ECF 222 at 2.  The Court denied Plaintiffs' motion in limine and agreed that "the disputed evidence" may "be relevant to issues that remain to be resolved in this case."  ECF 237

at 8.  The Court separately denied a motion to quash trial subpoenas served on two Department employees on the grounds that the employees' "firsthand knowledge of the decision-making behind the [Department's] treatment of the Genesis line-make" was relevant and "important."  ECF 244 at 5.

At trial, Plaintiffs argued that the open-point precondition was met in March 2018, and that the new line-make was established and rights of distribution were granted sometime on or after the October 30, 2018 licensing approval.  Tr. Vol. XI at 14:19-16:14, 18:3-22:24.  HMA argued that the March 2018 announcement articulated the Company's intent to have open points in the future for the line-make, and that even under Nero's view where the announcement created actual open points, those open points ceased to exist in May 2018—which was before the other preconditions also existed.  *Id.* at 22:22-23:6.

On numerous occasions at trial, Plaintiffs objected to evidence about the Department's actions, and this Court sustained the objections.  *E.g.*, Tr. Vol. II at 150:7-10; Tr. Vol. IV at 106:15-25.  At Plaintiffs' request, the Court instructed the jury to "disregard any testimony or evidence presented by [HMA] that argues or implies that it was legally impossible for them to offer [Nero] one or more rights of first refusal under the Agreement as result of the actions of the Florida Department of Highway Safety and Motor Vehicles."  ECF 303 at 18.  Meanwhile, this Court denied HMA's request to instruct the jury that all three preconditions in Section 10 needed to exist at the same time to give rise to Nero's right of first refusal.  Tr. Vol. X at 87:24-88:6.

In closing arguments, Plaintiffs' counsel stressed both this Court's instruction on impossibility and the lack of any instruction about whether Section 10 preconditions needed to exist concurrently to give rise to Nero's right of first refusal.  Tr. Vol. XI at 72:11-

6

73:23.  Although Plaintiffs offered no evidence about the value of the right of first refusal in January 2019, when they argued the breach occurred, the jury returned a verdict for Plaintiffs for $16 million.  ECF 304 at 4.

## LEGAL STANDARD

Under Rule 50, the court should grant judgment as a matter of law if "a reasonable jury would not have a legally sufficient evidentiary basis to find for" an opposing party. Fed. R. Civ. P. 50(a)(1); *see Howard v. Walgreen Co.*, 605 F.3d 1239, 1242 (11th Cir. 2010).  "Although [the Court] look[s] at the evidence in the light most favorable to the non-moving party, the non-movant must put forth more than a mere scintilla of evidence suggesting that reasonable minds could reach differing verdicts."  *Abel v. Dubberly*, 210 F.3d 1334, 1337 (11th Cir. 2000) (affirming grant of judgment as a matter of law).

By contrast,  "Rule 59(a) of the Federal Rules of Civil Procedure allows a court to grant a new trial." *Simmons v. Bradshaw*, 879 F.3d 1157, 1161 (11th Cir. 2018).  The Court has broad discretion to grant a new trial in a number of circumstances, including if it views the verdict as against the clear weight of the evidence or resulting in a miscarriage of justice, *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016); to remedy improperly excluded evidence that has caused a party to "suffer[ ] substantial prejudice" and to "not receive a fair trial," *Higgs v. Costa Crociere S.p.A.*, 720 F. App'x 518, 521 (11th Cir. 2017); and "on the basis of erroneous and prejudicial jury instructions," *Simmons*, 879 F.3d at 1162.  On this last point, a new trial is required if "the instructions do not accurately reflect the law and do not correctly instruct the jury" such that there is a "substantial and ineradicable doubt as to whether the jury was properly

7

guided in its deliberations."  *Id.* (internal quotation marks omitted); *see Broaddus v. Fla. Power Corp.*, 145 F.3d 1283, 1288 (11th Cir. 1998).

**ARGUMENT**

**I.     Judgment As A Matter Of Law Is Warranted On All Plaintiffs' Claims.**

**A.     Breach Of Contract And Good Faith And Fair Dealing.**

To prevail on Plaintiffs' breach of contract claim, they were required to show "(1) a valid contract; (2) a material breach; and (3) damages."  *Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999).  To prevail on their claim for breach of the implied covenant of good faith and fair dealing, they likewise had to show (among other things) "that an express term of the contract has been breached," and they cannot use the covenant "to vary the terms of an express contract." *Mount Sinai Med. Ctr. of Greater Miami, Inc. v. Heidrick & Struggles, Inc.*, 329 F. Supp. 2d 1309, 1312 (S.D. Fla. 2004) (internal quotation marks omitted), *aff'd*, 188 F. App'x 966 (11th Cir. 2006).  Both claims therefore turn on how the facts adduced at trial map onto the allegedly breached contractual duty, and under Florida law, interpretation of the meaning of the contract is generally a question of law for the Court, including whether the terms of a contract are ambiguous.  *See, e.g.*, *PartyLite Gifts, Inc. v. MacMillan*, 895 F. Supp. 2d 1213, 1232 (M.D. Fla. 2012).  Only contractual ambiguities present a jury question.  *Id.*

Here, under the correct interpretation of the contract, no reasonable juror could have found that HMA breached the contract or breached an implied covenant of good faith and fair dealing.  The meaning of Section 10 is plain and unambiguous:  HMA only had an obligation to offer Nero a right of first refusal that accrued when all three preconditions that created Nero's right of first refusal existed concurrently.  If those

conditions only existed in some sort of seriatim fashion, a right of first refusal would be nonsensical.  What would that right have first refusal have been for?  The right to sell vehicles that could not be distributed in Florida?  The right to claim an open-point in the eight county area to be a dealer for a non-existent luxury line-make and without distribution rights? Each of those is an absurd interpretation of a right of first refusal.  And based on the evidence at trial, at no point did all three preconditions exist simultaneously.

Even though the Court declined to instruct the jury that the three preconditions had to exist at the same time, *see infra* 23-24 (requesting new trial on this basis), the Court's review of the evidence in the case must be guided by interpreting the contract as a matter of law.[1]  The Agreement clearly sets out HMA's contractual duty to offer Nero a right of first refusal when three preconditions are present together.  To be clear, HMA does not argue that the contract requires all three preconditions to *emerge* at the same instant; they can arise at different times.  But for the right of first refusal to come into effect, there must be a point in time at which all three preconditions exist concurrently.

"Generally, a trial court should rely on the plain meaning of a contractual document when its language is clear and unambiguous."  *Retreat at Port of Islands, LLC v. Port of Islands Resort Hotel Condo. Ass'n, Inc.*, 181 So. 3d 531, 533 (Fla. 2d DCA 2015).  "A provision is not ambiguous merely because it requires analysis to interpret it."  *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 965 (11th Cir. 2014).  Instead, Florida courts look to "textual and contextual indicators" and "must strive to read a contract in a way that gives effect to all of the contract's provisions."  *Retreat*, 181 So. 3d at 533.

---

[1]      The ambiguities the Court identified concerned the meaning of "new luxury motor vehicle line-make" and "*who* must grant the right for distribution."  ECF 197 at 6-9.

The Agreement contains multiple indicators that Nero's right of first refusal to be appointed as a dealer for a new luxury line-make requires all three preconditions to exist concurrently.  For one thing, Section 10 states that Nero's "right of first refusal" allows him "to be appointed as a dealer for two (2) open points for any new luxury motor vehicle line-make."  Pls.' Ex. 1 at 4.  The "open points" in Section 10 thus are not open points in the abstract; they are open points for a "new luxury motor vehicle line-make."  As a matter of common sense, such open points can only exist if there is *in fact* a new luxury motor vehicle line-make.  In addition, Section 10 incorporates the "procedures as described in Exhibit 'A.' "  *Id.*  Exhibit A, in turn, details the process for Nero to select an open point and "establish[]" a dealership for the new luxury line-make.  *Id.* at 8-14.  Exhibit A thus underscores that "open points" is not an abstract term; the right of first refusal expressly links open points to the right to establish a dealership—a right which only has meaning if a new luxury line-make *and* open points are actually in existence.  *Id.* at 9-10 (describing in detail how Nero will select a parcel and if HMA approves that parcel, HMA will notify the Department of its intent to establish a luxury motor vehicle line-make dealership on that parcel and defend Nero against any protest litigation).  Section 11, which describes what happens if the same three preconditions from Section 10 occur, but an entity other than HMA is the distributor, explicitly confirms that all preconditions must exist simultaneously.  If a non-HMA distributor declines to offer Nero the right of first refusal laid out in Section 10, HMA owes Nero a set amount of money.  *Id.* at 5.  But HMA only owes Nero this money "if and when *all of the [Section 10 preconditions] are satisfied.*"  *Id.* (emphasis added).  The present tense "are satisfied" indicates that all three preconditions

must actively exist. *Cf. Arch Aluminum & Glass Co. v. Haney*, 964 So. 2d 228, 237 (Fla. 4th DCA 2007); *State v. Bishop*, 395 So. 2d 238, 239 (Fla. 1st DCA 1981).

Finally, reading the contract to provide Nero a right of first refusal to be appointed a dealer at two open points for a new luxury line-make even if the three preconditions do not exist at the same time leads to "an absurd conclusion." *Interline Brands*, 749 F.3d at 966 (internal quotation marks omitted).  It would make no sense for Nero to have a right to be appointed a dealer at two open points for a new luxury line-make simply because at one point in time there was a strategic plan for a new luxury line-make that would have representation in certain not-yet covered areas, if in fact when the new luxury line-make actually came into existence, all of those areas were filled and HMA did not desire any additional dealers.[2]  Florida contract law is clear that a "contract should not be interpreted to achieve an absurd result" and that "[t]he court should reach a contract interpretation consistent with reason, probability, and the practical aspect of the transaction between the parties."  *Torremar Condo. Ass'n, Inc. v. Great Am. Ins. Co.*, 2015 WL 11198246, at *2 (S.D. Fla. July 9, 2015).

And yet, at trial, Plaintiffs informed jurors that so long as each one of the three conditions existed at some point in the Agreement's ten-year lifespan, HMA owed Nero the right to be appointed the dealer in two open points for a new luxury line-make.  *See* Tr. Vol. XI at 78:24-79:4.  Plaintiffs' interpretation would require HMA to offer Nero dealerships in situations in which (1) no dealerships for the new line-make could be authorized, (2) no vehicles in that new line-make were authorized to be sold, and (3) no areas existed in which HMA wanted to add an additional dealership.  That interpretation

---

[2]     That scenario is precisely what happened here.

makes no sense and conflicts with "reason, probability, and the practical aspect of" granting Nero a right of first refusal for new dealerships at open points for a new luxury line-make. *Torremar*, 2015 WL 11198246, at *2. Because the plain meaning, non-absurd interpretation of the contract is that Nero only had a right of first refusal if the three preconditions concurrently existed, judgment as a matter of law for HMA is warranted on the breach of contract and implied covenant claims.

Plaintiffs' trial evidence suggested that a new luxury line-make was established and rights of distribution were granted by the Department's approval of the Genesis license on October 30, 2018.[3]  *See* Pls.' Ex. 22; Defs.' Ex. 34; *see also, e.g.*, Tr. Vol. XI at 15:22-16:4. Plaintiffs offered no evidence that there were any open points at that time—which Plaintiffs defined as locations in which HMA desired to have an additional dealership. ECF 303 at 11. That was because there were no such locations. The opposite was true:  The Department's requirement that Defendants offer Genesis franchises to the 17 dealers in the eight county area resulted in there being no locations where Defendants desired to add dealerships. Tr. Vol. V at 47:1-20. Indeed, Plaintiffs' evidence of open points focused primarily on whether HMA's *March 2018* announcement itself created open points. *See* Tr. Vol. XI at 33:7-18. But even assuming that announcement meant open points were in existence in March 2018,[4] the unrebutted

---

[3] At summary judgment, Plaintiffs argued that Florida law and the Department's licensing process were irrelevant to whether a line-make or rights of distribution existed. ECF 186 at 11-13. But by trial, Plaintiffs exclusively argued that the Department's October 30, 2018 decision was when rights of distribution were granted. Tr. Vol. XI at 14:19-16:14.

[4] HMA argued no open points existed in March 2018 and that this announcement only showed an interest in creating a select dealer network in the future. For this motion, HMA views the evidence in the light most favorable to the verdict, as is required.

evidence in the trial record goes on to show that HMA retreated from that plan in May 2018, and that in June, the Department required HMA to offer every existing Hyundai dealer the chance to become a Genesis dealer.  *See* Pls.' Ex. 20.  Indeed, Plaintiffs' position at trial was that the "line-make" and "rights of distribution" preconditions were not satisfied until January 2019.  *See* Tr. Vol. X at 62:4-25; Vol. XI at 12:17-24.  But that was long after any March 2018 "open points" ceased to exist.  As a result, no reasonable juror could have found that all three preconditions were in existence at the same time, meaning HMA had no obligation to extend a right of first refusal to Nero.

Nor could the fact that—in January 2019—every existing Hyundai location also became a Genesis dealership imply that open points existed in January.  This was not a result of HMA's "decision" that it was underrepresented in the eight county area.  Rather, the Department conditioned the creation of any Genesis dealerships on the strict requirement that *every* Hyundai dealer be offered the opportunity to also become a Genesis dealer at their existing locations.  This meant that—from the moment the Genesis line-make and its rights of distribution were first approved—the manufacturer was *never* unrepresented.  In other words, no later than the instant that Florida granted GMA a license, any "open points" ceased to exist.  As a result, the three preconditions never existed simultaneously and judgment as a matter of law is warranted on Nero's claims for breach of contract claim and breach of the implied covenant of good faith and fair dealing.

B.     **Anticipatory Breach.**

The jury did not decide Plaintiffs' anticipatory breach claim.  *See* ECF 304 at 3. But because no reasonable jury could have found HMA liable on this claim, the Court should therefore enter judgment for HMA on this claim too.  Anticipatory breach is a

narrow doctrine applicable to bilateral contracts in which both parties have yet to perform their respective obligations.[5]  A "bilateral contract" has "mutual promises between two parties."  *Restatement (First) of Contracts* § 12 (1932).  The doctrine of anticipatory breach immediately excuses performance by an aggrieved party, and allows that party to sue for breach, without first needing to perform its obligations under the bargain.

The doctrine is inapplicable on the facts of this case.  Once Universal Hyundai performed its obligations under the settlement agreement—to drop its lawsuit—only HMA had an obligation.  HMA had to offer Nero a right of first refusal to open points, if and when certain preconditions arose.  According to long-established contract law, once a bilateral contract like the settlement agreement "has become unilateral and . . . unconditional by full performance by one party," the doctrine of anticipatory breach no longer applies.  *Restatement (First) of Contracts* § 318 (1932); *see Restatement (Second) of Contracts* § 253 cmt. c (1981).  Thus, Nero could only sue for breach if and when breach occurred; he could not sue for anticipatory breach.

Contrary to their suggestion otherwise, Plaintiffs' anticipatory breach claim does not fall within "a limited exception to the general rule when jeopardy to the obligee is imminent."  *Haelterman v. Haelterman*, 846 So. 2d 1229, 1230 (Fla. 2d DCA 2003); *see* Tr. Vol. X at 68:25-69:4.  *Haelterman* cited a single Florida court which applied that exception in "the singularly rare fact pattern" in which a procedural impediment prevented the obligee from receiving effective relief in the event of imminent breach.  *See Poinciana Hotel of Miami Beach, Inc. v. Kasden*, 370 So. 2d 399, 402 (Fla. 3d DCA 1979).  That

---

[5] Defendants submitted a separate memorandum of law on this point to the Court in conjunction with their Fed. R. Civ. P. 50(a) motion.  ECF 289-2.

does not describe this case.  Nero could always receive relief in the form of money damages.  Nor can Nero claim imminent jeopardy of harm now—two years after his contractual right expired and when the right of first refusal never arose.

Nor does it render the contract bilateral that Nero informed HMA of his desire to exercise a right of first refusal in early 2018.  To accept a right of first refusal, an "option holder must strictly comply with the applicable provisions of the contract."  *Lupetto, Inc. v. S. Bay Devs. Grp., LLC*, 302 So. 3d 1061, 1063 (Fla. 3d DCA 2020) (internal quotation marks omitted); *see Allegro at Boynton Beach, L.L.C. v. Pearson*, 287 So. 3d 592, 600 (Fla. 4th DCA 2019) (holding that an unexercised right of first refusal was not subject to anticipatory repudiation).  Here, the "applicable provisions" of the settlement agreement required HMA to first offer Nero the right, before he could accept.  HMA never did so, and thus Nero never properly accepted an offer.

Nero cannot claim anticipatory breach for a second and independent reason.  A party cannot claim anticipatory breach for an obligation subject to conditions precedent that have not yet arisen.  "[A]ny damages the Plaintiff might have sustained as a result of the alleged anticipatory breach are too speculative to sustain an action for breach of contract."  *Rader v. Allstate Ins. Co.*, 789 So. 2d 1045, 1047 (Fla. 4th DCA 2001).  After all, the conditions precedent may *never* arise.  Similarly, a party cannot be liable in retrospect for anticipatory breach on an obligation subject to conditions precedent when those conditions precedent *never* arose throughout the entire life of the contract.  The facts of this case again show why:  HMA never had an obligation to Nero nor breached an obligation.  The law therefore does not force HMA to compensate Nero for a duty HMA neither had nor violated.  HMA thus deserves judgement on this claim too.

15

**II.     This Court Should Grant A New Trial.**

In the alternative, this Court should grant HMA a new trial.  The Court repeatedly excluded evidence relating to the decisions of the Department and other state regulators which was relevant—and indeed critical—to HMA's defenses.  The Court then instructed the jury to "disregard" and give no weight to evidence "that argues or implies that it was legally impossible" for HMA to perform its obligation "as a result of the actions of the [Department]," without acknowledging or explaining that this evidence had relevance to HMA's defense beyond the impossibility doctrine or identifying for the jury what *admitted* evidence must be "disregarded."  ECF 303 at 18.  In addition, denying HMA's requested instruction that all three preconditions needed to exist concurrently was misleading and confused the jury as to the applicable principles of law that should have guided its decision.  The Court also improperly restricted HMA's presentation of parol evidence.  Finally, no evidence supports the jury's calculation of damages.

**A.     The Court's Partial Summary Judgment Ruling Erroneously Precluded Defendants From Presenting Impossibility As An Affirmative Defense To The Jury.**

At summary judgment, the Court held that Nero was entitled to judgment as a matter of law on HMA's impossibility affirmative defense, based on a lack of evidence that certain laws in Florida changed between 2009 and 2018 or were applied contrary to what was expected.  The Court reasoned that as a result, the Department's denial of the initial licensing application was foreseeable. ECF 197 at 16-18.  That ruling was erroneous.

The doctrine of impossibility of performance excuses "nonperformance" in situations "where the purpose for which the contract was made has become impossible to perform."  *Zephyr Haven Health & Rehab Ctr., Inc. v. Hardin*, 122 So. 3d 916, 920 (Fla. 2d DCA 2013) (internal quotation marks omitted).  Under Florida law, "the doctrine is not

16

limited to strict impossibility, but includes impracticability due to unreasonable expense." *Fla. Laundry Servs., Inc. v. Sage Condo. Ass'n, Inc.*, 193 So. 3d 68, 68 (Fla. 3d DCA 2016). The Department's decision made it legally impossible—and certainly impracticable—for Defendants to offer Nero a right of first refusal if that right had existed.

The correct time for assessing foreseeability is at the time the parties signed the agreement. *See Am. Aviation, Inc. v. Aero-Flight Serv., Inc.*, 712 So. 2d 809, 810 (Fla. 4th DCA 1998). The question was therefore whether it was undisputed that HMA had "knowledge of the facts making performance impossible" in 2009. *Id.* The answer to that is no. First, it was undisputed that HMC did not market Genesis as a separate luxury *brand* in the United States until 2016—and so HMA could not have possibly anticipated the various legal challenges that decision might cause when it contracted with Nero in 2009. *See* ECF 176 at 6 (SUMF ¶ 28-29); ECF 185 at 5 (Response to SUF ¶ 7). Second, Defendants presented evidence creating a dispute of fact as to whether they anticipated that the Department would require them to use existing Hyundai dealers as a condition of licensing for a new luxury line-make in Florida. *See* ECF 185-4 (Raphael Dep. at 48:4-17) (GMA "had a different interpretation" of Florida's regulations). Other states, as Defendants' evidence showed, "had precisely the opposite interpretation" of similar regulations—consistent with how Defendants anticipated the Department would interpret Florida's regulations. *Id.*; *see Genuinely Loving Childcare, LLC v. Bre Mariner Conway Crossings, LLC*, 209 So. 3d 622, 625-626 (Fla. 5th DCA 2017) (contract did not clearly allocate risk regarding denial of license, creating issue of fact for the jury). Third and relatedly, the Department's unexpected decision followed intense and well-coordinated lobbying by dealers, dealer associations, and dealer attorneys. ECF 177-3 (Raphael Dep.

at 173:21-174:19, 206:15-208:10); 177-11, 177-20.  All of this evidence was sufficient to create a dispute of fact as to foreseeability—an issue that is normally a "question . . . of fact, which should not [be] decided on the basis of a summary judgment." *Walter T. Embry, Inc. v. LaSalle Nat'l Bank*, 792 So. 2d 567, 570 (Fla. 4th DCA 2001) ("the question is whether it was reasonably foreseeable that a dispute would arise" leading to the impossibility); *Genuinely Loving Childcare,* 209 So. 3d at 625 ("Generally, foreseeability in the context of contractual defenses is an issue of fact precluding summary judgment.").

### B.   This Court's Evidentiary Decisions Improperly Prevented Defendants From Presenting Relevant Evidence To Their Defense.

At trial, a critical part of HMA's defense was that even if, as Nero argued, the March 2018 announcement of a small, select dealership network created open points, those points were closed by HMA's further announcement in May 2018 that every Hyundai dealer nationwide would be offered a Genesis dealership and the Department's decision in June 2018 requiring the same.  The May 2018 announcement followed a regulatory decision by Texas state regulators requiring all Texas Hyundai dealers to be offered a Genesis dealership, and the June 2018 regulatory decision in Florida to the same effect meant that by the time a new luxury line-make was available for distribution in Florida, HMA would not be looking for any additional dealerships for that line-make.

Instead, the Department's decision meant HMA never owed an obligation to Nero: For HMA to owe Nero a right of first refusal as to new dealerships for the new luxury line-make, HMA needed a distributor license for Genesis vehicles from the Department.  But the Department's requirement that Defendants offer all existing Hyundai dealers the right also to be a Genesis dealership eliminated any open points that the March 2018 announcement created (assuming it created any).  This argument about the meaning of

18

the contract and its application to this case was entirely distinct from an affirmative defense of impossibility.  But at every turn, HMA was unable to present its core case to the jury—because this Court incorrectly ruled that evidence of licensing decisions from the Department and other state regulators solely related to the affirmative defense of impossibility.  Those decisions were legally wrong, severely prejudiced HMA, and warrant a new trial.

Based on this Court's pretrial rulings, HMA prepared for trial understanding that it would be able to present the following case to the jury:  The actions of the Department and other state regulators explained why HMA abandoned any attempt to create a small dealer network, never had open points, and therefore never had an obligation to Nero. But as the trial proceeded, the Court repeatedly sustained Nero's objections to this key evidence and prevented HMA from presenting its theory that the "open point" condition was either never in existence, or if in existence in by the March 2018 announcement, extinct by June 2018 at the latest.  For example, the Court prohibited HMA from asking Nero whether he was "aware that the Department . . . determined that every Hyundai dealer had to be offered a Genesis franchise."  Tr. Vol. II at 150:7-10.  It prohibited HMA from asking Erwin Raphael, GMA's former chief executive, why Genesis did "not go forward with" the March 2018 plan that Nero had questioned him about at length.  Tr. Vol. IV at 106:15-25.  And it prohibited the jury from hearing Raphael's complete description of how GMA responded to the Department's denial of GMA's license application, Tr. Vol. V at 38:16-39:20, and preemptively kept Defendants from asking a Department employee why she denied GMA's original application, Tr. Vol. VII at 92:12-19.

Because of these rulings, Plaintiffs were allowed to accuse HMA of making "business decisions" that hurt Nero without Defendants being able to explain why they pivoted from the March 2018 announcement and did not have any open points for Genesis. The Court viewed the excluded evidence as relevant to the affirmative defense of impossibility, but even if the evidence was relevant to that argument, evidence relating to a dismissed claim or defense is still independently relevant and admissible if it tends to prove or disprove another claim or defense. *See Perry v. Schumacher Grp. of La.*, 2020 WL 6938391, at *2 (M.D. Fla. Nov. 25, 2020). Testimony about the actions of the Department and other regulators was unquestionably admissible to explain why no open points existed at the same time as the other preconditions were met, and therefore why HMA never breached the contract. HMA's motives were also relevant to Nero's claim of breach of the implied covenant of good faith and fair dealing. *See S&B/BIBB Hines PB 3 Joint Venture v. Progress Energy Fla., Inc.*, 365 F. App'x 202, 206 (11th Cir. 2020).

This exclusion of relevant evidence prejudiced HMA. It left HMA unable to coherently explain to the jury why it had modified the initial plan to use a small dealer network and instead used the existing Hyundai dealer network. *See, e.g.*, Tr. Vol. IV at 106:15-25. It prevented jurors from understanding HMA's argument that it never had open points at all, or at a minimum, that it did not have open points at a time when the other two preconditions to the right of first refusal were also satisfied. And it allowed Plaintiffs to argue, at closing, that Defendants' actions were unjustified and to imply that HMA changed its March 2018 plans in response to Nero filing this lawsuit, Tr. Vol. XI at 12:6-10. Plaintiffs also argued that open points for new dealerships must have existed because "there were no Genesis dealer agreements" in 2017, but as of December 2018,

there were Genesis dealer agreements.  *Id.* at 27:24-28:4; *see also id.* at 33:19-23. Defendants, in contrast, were precluded from explaining to the jury that there were never any open points at a time the new luxury line-make existed and was available for distribution.  For all of these reasons, the exclusion of this relevant evidence warrants a new trial.  *See Garcia v. GEICO Gen. Ins. Co.*, 807 F.3d 1228, 1235 (11th Cir. 2015); *Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1350-1356 (11th Cir. 2007).

### C.   The Court's Instruction On Impossibility Warrants A New Trial.

The Court's jury instruction on impossibility is an independent reason a new trial is warranted:  It directed jurors to ignore and give no weight to the limited evidence that HMA was able to present about the Department's actions.  ECF 303 at 18.  And the Court refused to explain to the jury that they *could* consider the Department's decision for purposes of determining if open points existed.  *See* Tr. Vol. X at 97:2-99:1.  The instruction thus did "not accurately reflect the law."  *Broaddus*, 145 F.3d at 1288.

The Court told the jury to ignore evidence that was relevant to the most central issue at trial—whether and when any open points for new luxury line-make dealerships existed.  Even without impossibility before the jury, evidence about the Department's actions was plainly relevant—as the Court acknowledged at times—to HMA's argument that as a result of the Department's decision to require HMA to use the existing Hyundai dealer network, no open points ever existed at all, and certainly not at the same time as the other two preconditions.  *See supra* pp. 8-14; *see also* Tr. Vol. VII at 93:7-15 ("[J]ust because what a witness says can go to two different reasons doesn't mean that it can be excluded. . . . And so to the extent that . . . testimony goes . . . to the issue of open points or the issue of line-make or whatever, that's different than it was impossible.").  Plaintiffs

may argue the instruction allowed the jury to consider some of the Department's actions by directing the jury to determine for itself what evidence from trial "argue[d] or implie[d]"— i.e., was relevant to—impossibility.  ECF 303 at 18.  But relevance is a legal question for the Court; "it is not the province of the jury to decide."  *Simmons*, 879 F.3d at 1166.

Because the Department's actions were at "the heart of [HMA's] defense, it was critical that the court properly guide the jury."  *Christopher v. Cutter Lab'ys*, 53 F.3d 1184, 1194 (11th Cir. 1995).  But the instruction did just the opposite: It misled the jury and greatly prejudiced HMA.  *See Broaddus*, 145 F.3d at 1288.  The clearest indication of prejudice is found in Plaintiffs' "argument to the jury."  *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1367 (5th Cir. 1981).  HMA's counsel told the jury to "ask yourself, if there were open points for Genesis in the eight-county area, what reason would Hyundai and Genesis have not to have offered them to Mr. Nero?"  Tr. Vol. XI at 71.  In response, "plaintiffs' counsel reinforced the improper jury instruction" by reading it word-for-word, *Cutter Lab'ys*, 53 F.3d at 1195, and then telling the jurors to disregard HMA's evidence that HMA "would have liked to give Mr. Nero the open points" but had no open points to give.  Tr. Vol. XI at 71 at 72:19-73:23 ("If [the March 2018] plan couldn't come to pass . . . that is not a viable defense . . . . That's what this instruction means."); *see also id.* at 78:17-23.  "The fact that counsel considered the faulty instruction to be 'the heart' and 'the guts of the case,'" demonstrates the extent of the prejudice that resulted from it. *Miller*, 650 F.2d at 1372.[6]

---

[6]      The prejudice was further compounded by Plaintiffs preemptively identifying the evidence they would later ask jurors to ignore in closing.  Once the Court informed the parties that it would give an instruction on impossibility, Plaintiffs' counsel repeatedly couched its objections as a complaint the evidence "relates to impossibility" and should be disregarded, even when the evidence was admissible.  *See* Tr. Vol. VIII at 19:6-12

**D.   This Court's Refusal To Instruct The Jury Regarding The Preconditions Needing To Exist Concurrently Warrants A New Trial.**

The Court also erred when it refused HMA's request to instruct the jury that all three preconditions had to exist concurrently in order to give rise to Nero's right of first refusal. *See* Tr. Vol. X at 84-89. The failure to give this instruction—and provide the jury the correct framework for understanding the right of first refusal—warrants a new trial in which the jury is properly instructed on this point. A jury verdict should be vacated "if the failure to give the instruction resulted in prejudicial harm to the requesting party." *Rand v. Nat'l Fin. Ins. Co.*, 304 F.3d 1049, 1052 (11th Cir. 2002). Here, the language of the contract requires all three preconditions to exist simultaneously for HMA to have had an obligation to extend Nero a right of first refusal, *see supra* pp. 8-13, and the Court's refusal to instruct the jury about the meaning of the contract greatly prejudiced defendants.

In particular, Plaintiffs' counsel argued to the jury that the preconditions did not need to exist at the same time. Tr. Vol. XI at 72:11-18. Counsel even argued that the fact that this Court had not provided an instruction about the preconditions existing simultaneously constituted positive proof that the contract did not require the preconditions to arise at the same time. *See id.* ("It's not in the jury instructions. It's not on the verdict form. If that were true, surely it would make its way into one of those documents, but it's not there."); *see also id.* at 78:24-79:4 (similar). As a result, the jury was misled into believing that the preconditions need not exist simultaneously—and

---

("Objection . . . It goes to impossibility."); *id.* at 23:17-21 ("Objection . . . This is the 'why' we talked about."). Although the Court overruled those objections, Defendants used them to preemptively highlight for the jury the testimony Plaintiffs would later tell jurors to ignore. *See Christopher v. Florida*, 449 F.3d 1360, 1364-67 (11th Cir. 2006) (affirming new trial when, among other things, counsel had made argumentative comments in open court).

therefore found breach when none actually occurred, given that there was no evidence of open points at the January 2019 time when the rights of distribution and the new luxury line-make came into existence.

### E.   The Court Prevented Defendants' Witnesses From Testifying About The Contract's Meaning.

It was also prejudicial error for the Court to preclude HMA from offering parol evidence about the contract's meaning.  At summary judgment, this Court directed both sides to introduce evidence supporting their interpretations of key terms in Section 10 and the meaning and purpose of Section 11.  ECF 197 at 6-7, 8-9, 19-20.  At trial, the Court permitted Plaintiffs to ask witnesses questions about the meaning of contract terms, the negotiation of the contract, and other parol evidence, *see, e.g.*, Tr. Vol. II at 72:3-16, 77:13-17, 80:5-81:2 (W. Nero); Vol. III at 26:6-19 (W. Nero), 69:17-71:22 (D. Zuchowski); Vol. V at 89:13-22, 92:2-93:21, 97:16-98:5 (E. Quinton), including over Defendants' objections, *see* Vol. V at 123:20-124:25 (E. Quinton).  But the Court restricted the parol evidence that HMA could elicit from witnesses.  *See, e.g.*, Tr. Vol. VII at 102:16-19 ("[D]on't ask him to interpret the contract"), 107:6-109:14 (A. Bertron); Vol. X at 11:4-8, 12:10-13:14 (W. Hernandez).  The Court even went so far as to grant Plaintiffs' motion to strike an answer to a question Plaintiffs' counsel asked of one of Defendants' witnesses because Plaintiffs' counsel did not like the answer.  Tr. Vol. X at 52:2-19.  These evidentiary decisions prejudiced Defendants because they left jurors with a one-sided story of how the parties viewed the contract they were being asked to interpret and apply.

### F.   A New Trial Or Substantial Remittitur Is Warranted On Damages.

The Court should also order a new trial to determine damages or, in the alternative, order remittitur.  "[U]nder Rule 59(a), a district court may, in its discretion, grant a new

trial if, in the court's opinion, the verdict is against the clear weight of the evidence." *McGinnis*, 817 F.3d at 1254.  The jury found that Nero was entitled to $16 million as damages for breach of contract.  But Plaintiffs' damages expert—the only witness to testify that Nero's losses equaled $16 million—testified that he valued damages using a "date of loss" in December 2019 or January 2020.  Tr. Vol. VII at 20:21-24:2.

Under Florida law, damages for breach of contract must be measured as of the date of the breach, and later values of the loss are "legally irrelevant."  *Haddad*, 589 F. Supp. 2d at 1307; *see also Arizona Chem. Co. v. Mohawk Indus., Inc.*, 197 So. 3d 99, 103 (Fla. 1st DCA 2016) (prejudgment interest seeks to compensate a plaintiff for any increased damages between the date of breach and date of judgment). In this case, the date of breach was in January 2019.  ECF 317 at 4.  Moreover, Nero's right of first refusal expired in August 2019, so under no circumstances could Plaintiffs' expert's estimates of the value of that right in December 2019 or later be relevant.  Because there is no evidence in the trial record showing that Nero's damages on the date of breach totaled $16 million, the verdict is against the clear weight of the evidence, and a new trial should be ordered to determine the proper measure of damages.

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendants move for judgment as a matter of law, or alternatively for a new trial.

## LOCAL RULE 3.01(G) CERTIFICATE

Pursuant to Local Rule 3.01(g), counsel for Defendants certify that they conferred with counsel for Plaintiffs by email on November 15 and 16 regarding the issues raised herein, and Plaintiffs do not consent to the relief requested and have indicated that they will file a written response to this motion.

Dated: November 16, 2021

Respectfully submitted,

/s/ Ryan L. Ford
Ryan L. Ford (admitted *pro hac vice*)
Antonio M. Elias (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth St. NW
Washington, D.C. 20004
Tel.: (202) 637-5600
ryan.ford@hoganlovells.com
antonio.elias@hoganlovells.com

Carl J. Chiappa (admitted *pro hac vice*)
John J. Sullivan (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
390 Madison Ave.
New York, NY 10017
Tel.: (212) 918 3000
carl.chiappa@hoganlovells.com
john.sullivan@hoganlovells.com

James Andrew Bertron, Jr.
Florida Bar No. 0982849
NELSON MULLINS RILEY &
SCARBOROUGH LLP
215 South Monroe Street, Suite 400
Tallahassee, FL 32301
Tel.: (850) 907-2507
andy.bertron@nelsonmullins.com

*Counsel for Defendants Hyundai Motor America and Genesis Motor America*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 16, 2021, the foregoing was filed with the Clerk of Court using CM/ECF, which will serve a Notice of Electronic Filing on all counsel of record.

/s/ Ryan L. Ford
Ryan L. Ford