**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ACTION NISSAN, INC. d/b/a
UNIVERSAL HYUNDAI and WILLIAM NERO,

          Plaintiffs,

v.

HYUNDAI MOTOR AMERICA and GENESIS
MOTOR AMERICA,

          Defendants.

6:18-cv-380-Orl-78EJK

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT HYUNDAI MOTOR AMERICA'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND <u>MOTION FOR A NEW TRIAL</u>**

Plaintiffs, Action Nissan, Inc. d/b/a Universal Hyundai ("Universal") and William Nero ("Nero") ("Plaintiffs"), under Local Rule 3.01, file this Response in Opposition to Defendant Hyundai Motor America's ("HMA") Renewed Motion for Judgment as a Matter of Law and Motion for New Trial (the "Motion" or "Def. Mot.").

## **INTRODUCTION**

To resolve an earlier dispute, HMA and Plaintiffs entered into a settlement agreement (the "2009 Agreement"). The core dispute in this matter pertains to Section 10 of the 2009 Agreement, which granted Nero the right of first refusal on two open points for any new luxury motor vehicle line-make in eight named counties (the "Eight County Area") effective following the occurrence of certain events. Pls.' Ex. 1 at 4. These events must have occurred within a ten-year period spanning from August 10, 2009 to August 10, 2019 (the "ROFR Period"). *Id.* The first precondition is that Hyundai Motor Corporation ("HMC"), or any entity in which HMC is the majority owner or has controlling interest in, creates a new luxury motor vehicle line make. The second precondition is that HMA, a subsidiary thereof, or an entity controlled by HMA, is granted distribution rights to the new luxury motor vehicle line make in the United States. The third is that open points exist in the Eight County Area. *Id.*

Evidence was presented affirming the existence of all three preconditions. First, HMC created a new luxury motor vehicle line-make – Genesis. In January of 2018, HMA and Genesis Motor America ("GMA") stated in a press release they would establish an independent dealership network in the United States. Pls.' Ex. 3. Then, on February 9, 2018, a letter was sent to the Hyundai dealer body offering a buyout of Genesis rights and stating that GMA is seeking an initial dealer body of less than one-hundred locations

in the United States. Pls.' Ex. 5. GMA applied to the State of Florida for a distributor license in December of 2017 and ultimately received the distributor license from the Department of Highway Safety and Motor Vehicles (the "DHSMV") in October 2018. Pls.' Ex. 18; Def.' Ex. 34.  Dealer Agreements were issued, and licenses were issued from the DHSMV, to Florida Genesis dealers in 2018 and early 2019. Tr. Vol V 51:3-6; Tr. Vol. VIII 25:3-7; Def. Ex. 32.

Second, HMA, as defined in the 2009 Agreement, was granted distribution rights for the new luxury motor vehicle line make. HMA owned GMA. Tr. Vol. IV at 20:11-13; 30:17-32:1; Pls.' Ex. 17. At all times Genesis vehicles have been distributed by either HMA or GMA. Tr. Vol. IV at 18:23-19:9; 117:20-24; 119:19-22; 121:11-13.

Third, open points existed in the Eight County Area. "Open point" is an industry term, which is essentially a geographic area (or "point") where there is not a dealership for a specific line-make, but the manufacturer/distributor wants to establish a dealership. Tr. Vol. V at 7:1-5; 117:14-17; Tr. Vol. VI at 97:20-98:11; 61:10-62:10. Testimony was presented that a manufacturer or distributor need not be licensed to establish an open point. Tr. Vol. V at 90:11-15; 90:24-91:7. On March 2, 2018, GMA sent a letter to all dealers seeking interest in the Genesis line-make. Pls.' Ex. 8. This letter also included a list of "initial markets" identified by GMA where GMA wanted to have Genesis dealerships, which amounted to open points. Further, based upon the definitions of "open point" provided at trial, the fact HMA had no Genesis dealers in the Eight-County Area and then established Genesis dealerships, without offering any open points to Plaintiffs, is *prima facie* proof that open points existed.

Nero and his counsel sent multiple letters to HMA and Erwin Raphael, the then head of GMA, regarding Nero's contractual rights under the 2009 Agreement. Tr. Vol. II at 84:24-85:10; 87:15-21; Pls.' Ex. 4, 6, 7. HMA did not respond.

## LEGAL STANDARD

Fed. R. Civ. P. 50(b) allows a party to move for judgment as a matter of law after the entry of a judgment. It "is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486, 128 S. Ct. 2605, 2617, 171 L. Ed. 2d 570 (2008).

'[I]n considering a motion for a directed verdict, the court does not weigh the evidence, but draws all factual inferences in favor of the nonmoving party." *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554, 110 S. Ct. 1331, 1338, 108 L. Ed. 2d 504 (1990). As stressed by the Eleventh Circuit, "[i]t is the jury's task—not [the court's]—to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *Shannon v. Bellsouth Telecommunications, Inc.*, 292 F.3d 712, 715 (11th Cir. 2002) (internal quotation marks omitted). A court should only grant a judgment as a matter of law when the non-moving party "presents no legally sufficient evidentiary basis for a reasonable jury to find" for the non-moving party. *Fed. Deposit Ins. Corp. v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, No. 8:11-CV-2831-T-33MAP, 2013 WL 4402968, at *4 (M.D. Fla. Aug. 15, 2013). It is only permissible "if the evidence is so overwhelmingly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict." *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241, 1246 (11th Cir. 2001).

Motions for a new trial are within the sound discretion of the trial court. *Kubiak v. S.W. Cowboy, Inc.*, No. 3:12-CV-1306-J-34JRK, 2016 WL 5933388, at *2 (M.D. Fla. Oct.

12, 2016). Despite the discretion afforded, "the court should give great deference to the jury's verdict and grant a new trial **sparingly**." *Id.* (emphasis added). Rule 59(a)(1)(A) allows the court to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59. "Such reasons include a verdict which is against the weight of the evidence, an excessive damage award, and substantial errors in the admission or rejection of evidence or the instructions to the jury." *Long v. E. Coast Waffles, Inc.*, No. CV216322FTMPAMMRM, 2018 WL 11236649, at *1 (M.D. Fla. June 13, 2018). "To warrant a new trial based on an erroneous jury instruction, a party must establish that [a] challenged instruction was an incorrect statement of the law, and that it was probably responsible for an incorrect verdict leading to substantial injustice." *Johnson v. Clark*, 484 F. Supp. 2d 1242, 1252 (M.D. Fla. 2007) (internal quotation marks omitted). A new trial on damages "should be ordered only when the verdict is so excessive as to shock the conscience of the court." *Carter v. DecisionOne Corp. Through C.T. Corp. Sys.*, 122 F.3d 997, 1006 (11th Cir. 1997).

However, "[b]ecause it is critical that a judge does not merely substitute his[/her] judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) (internal quotation marks omitted). "Unlike in considering a motion for judgment as a matter of law, the Court is permitted to reweigh the evidence in determining whether to grant a new trial", however, "when there is no great weight of the evidence in any direction, it would be improper to grant a new trial based on the sufficiency of the evidence." *Kubiak*, No. 3:12-CV-1306-J-34JRK, 2016 WL 5933388, at *2.

## ARGUMENT

Neither judgment as a matter of law nor a new trial is warranted on the claims tried, let alone on *all* claims as requested by Defendant HMA.

### I.   HMA's Renewed Motion for Judgment As A Matter Of Law Lacks Substantive Merit And Raises Grounds Not Addressed In The Original Motion.

First, HMA's Motion for Judgment as a Matter of Law must be denied, because HMA also failed to raise this issue in the original motion for judgment as a matter of law on the contract claims, so it is precluded from doing so now. Second, HMA's Motion must be denied, because the arguments are contradicted by the plain language of the 2009 Agreement and the facts. Additionally, there is no caselaw supporting HMA's position with respect to whether anticipatory breach applies only to bilateral contracts.

### A.   HMA's Renewed Motion for Judgment As A Matter of Law Raises New Grounds For Relief.

The portion of the Motion that pertains to the contract claims should be denied, because it impermissibly raises grounds not addressed in HMA's original motion. HMA's original motion for judgment as a matter of law on breach of contract and breach of the implied covenant of good faith and fair dealing did not assert that the preconditions had to be satisfied concurrently. Tr. Vol. VII at 84:10-85:5. Instead, HMA asserted that "all of the conditions required for Hyundai's performance must have occurred." *Id.* In the original motion, HMA contended there was not sufficient evidence in the record to show that open points were created. *Id.* These grounds are **substantially** different, as the new grounds effectively add an additional, new, precondition that was not argued at trial. HMA cannot now raise these new grounds (that the preconditions need to exist concurrently) in its renewed motion. *See Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir. 2004)

("This Court repeatedly has made clear that any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a) at the close of the evidence and prior to the case being submitted to the jury."); *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1289 (11th Cir. 1998) (if the grounds of the original and renewed motions "vary greatly and the trial court relies upon the new grounds to set aside the jury's verdict, we will reverse."); *Noel v. Terrace of St. Cloud, LLC*, 212 F. Supp. 3d 1193, 1198 (M.D. Fla. 2016) (noting this is a procedural safeguard to protect the nonmoving party's right to cure deficiencies in the evidence before the case is submitted to the jury). HMA did not raise its present argument until after the close of evidence and immediately before jury deliberations, at a charge conference. Tr. Vol. X 84:24-88:14. Consequently, HMA's Motion must be denied.

Even if HMA had raised this argument in its original motion, HMA's position is unsupported by the plain language of the 2009 Agreement, and was rejected by the Court. Tr. Vol. X at 86:3-7; 86:24-78:2; 87:18-23. The Court having found this was not required in the 2009 Agreement, instructed the jury consistent with the express language of the 2009 Agreement. ECF 303 & 304.  HMA cannot now be heard to complain that the evidence was so one-sided on this issue that no reasonable jury could find for Plaintiffs when the evidence comports with the 2009 Agreement. Further, because HMA did not raise this issue until after the close of evidence, it waived its right to move for judgment as a matter of law on this theory. The Motion should be denied regarding these issues.

### B. Ample Evidence Supports The Jury's Finding on Breach of Contract and Breach of Implied Covenant of Good Faith.

HMA's Motion with respect to the breach of contract and breach of the implied covenant of good faith and fair dealing should also be denied, because of the insurmountable evidence of the actual existence of the preconditions before expiration of the ROFR Period, and evidence of Nero's reasonable expectations. In the Court's own words, the existence of the new luxury motor vehicle line-make and distribution rights preconditions are "not really much of an issue." Tr. Vol. X at 74:6-13. This is because extensive testimony was presented as to the existence of both of these preconditions before August 10, 2019. *Supra* at 1-2. Evidence and testimony presented on "open points" is no less copious. *Supra* at 3. Substantial evidence was also presented on Nero's reasonable expectations under the 2009 Agreement. *See* Tr. Vol II at 72:22-73:1; 80:17-81:2; 82:16-23; 84:21-85:10; 86:7-23; 87:15-21; 88:3-24; 92:12-25; 100:4-101:5; 103:11-20. The evidence and testimony presented, and the jury's verdict, belies the argument that no reasonable jury could find that all three preconditions existed before August 10, 2019. As there is a legally sufficient basis for the jury to find that the preconditions existed before August 10, 2019, the judgment as a matter of law on the contract claims should be denied. *See Fed. Deposit Ins. Corp.*, 2013 WL 4402968, at *4; *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241, 1246 (11th Cir. 2001) (judgment as a matter of law is only appropriate where "the evidence is so overwhelmingly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict.")

### C. Judgment As a Matter of Law on Anticipatory Breach Is Not Warranted.

HMA also moves for judgment as a matter of law on the anticipatory breach claim and contends that no reasonable jury could have found HMA liable for the claim.[1] HMA advances the same arguments made at trial, insisting that the 2009 Agreement became unilateral once Plaintiffs performed its obligations, and that the doctrine of anticipatory breach does not apply to unilateral contracts. At trial, the Court noted that it could not find a single case where a bilateral contract became a unilateral contract, and asked HMA if it had located one. Tr. Vol.  X at 66:21-67:8. Then, and now, HMA cited no case law on a bilateral contract converting to unilateral contract. In fact, one of the few new cases cited by HMA (*Lupetto, Inc.*) states that a unilateral contract can become a bilateral contract, but states nothing of the inverse proposition made by HMA. *Lupetto, Inc. v. S. Bay Devs. Grp., LLC,* 302 So. 3d 1061, 1063 (Fla. 3d DCA 2020) (in contract with an option to purchase, the contract becomes bilateral after notice).

HMA also fails to satisfactorily argue why the "jeopardy" exception raised in response to their unilateral contract argument fails. *Haelterman v. Haelterman*, 846 So. 2d 1229, 1230 (Fla. 2d DCA 2003); *see* Tr. Vol. X at 68:25-69:4. This exception allows anticipatory breach to apply in a unilateral contract when jeopardy to the oblige is imminent. *Haelterman*, 846 So. 2d at 1230. HMA argues this exception is inapplicable because Nero always had access to relief in the form of money damages. This argument misses the point, because at the time of filing and at the time of the alleged anticipatory breach, Plaintiffs had access to the remedy of specific performance, as well as additional

---

[1] It is important to note that the jury did not rule on the anticipatory breach claim because the verdict form *precluded* a ruling on anticipatory breach if an actual breach was found. That is, if the jury found on the other breach claims (as they did), they were instructed to skip the question on anticipatory breach. ECF 304 at 3.

statutory rights afforded to automotive dealers, and *that remedy* was in jeopardy. Tr. Vol. VII 78:8-79:14.

HMA's final argument that Nero must be offered the right of first refusal before he can accept the same is also off base. HMA's *failure to offer said right of refusal* after the satisfaction of the preconditions and numerous letters regarding Nero's rights is the entire premise for the anticipatory breach claim. For this to even be relevant, HMA must first support its original argument that the 2009 Agreement was unilateral, which it has failed to do.

Substantial evidence was introduced that HMA anticipatorily breached the 2009 Agreement. HMA demonstrated that it would not or could not perform the agreement, unequivocally and absolutely, through its total silence to three letters from Nero and his counsel regarding Nero's rights and its subsequent actions. Pls.' Ex. 4, 6, 7. HMA failed to even acknowledge these three letters, when it was acknowledged that at least one letter was received. Tr. Vol II at 92:17-25; 95:8-14; Vol. III at 13:12-16; Vol. V at 13:14-25l Vol. X at 17:22-18:6; 43:4-5; 44:8-9. Then, on March 2, 2018, GMA sent out a letter to the dealer body identifying dealership locations and asking others (not Nero) to apply to be the dealer in those locations, many of which were within Nero's Eight County Area. Pls.' Ex. 8. This affirmative offer of dealerships located within the Eight-County Area to other individuals, combined with HMA and GMA's total silence to Nero's letters, amounted to a clear repudiation of the 2009 Agreement and Nero's rights of first refusal. *See* ECF 197 at 10 ("while it is true that 'a repudiation . . . must be distinct, unequivocal, and absolute," it may be evidenced by . . . voluntary acts' including the failure to provide adequate guarantee of performance upon request or taking actions that would render it

impossible to perform.") (citing *Mori v. Matsushita Elec. Corp. of Am.*, 380 So. 2d 461, 463 (Fla. 3d DCA 1980)). Thus, judgment as a matter of law on the anticipatory breach claim should be denied because there is a legally sufficient evidentiary basis for a reasonable jury to find for Plaintiffs.

## II. This Court Should Not Grant A New Trial.

### A. The Court's Partial Summary Judgment Ruling on Impossibility Was Proper.

HMA has argued legal impossibility *ad nauseum*. HMA argues that it was impossible to perform under the 2009 Agreement, because the Department denied GMA's initial license application. The license was denied under Fla. Stat § 320.6415, which requires that the Department deny a distributor application for motor vehicles currently offered for sale under a franchise agreement unless the applicant offers each existing dealer a new franchise agreement with substantially the same provisions. Pls.' Ex. 20 at 1-2. HMA argues that it could not comply with the 2009 Agreement, because it had to offer Genesis dealerships to all Hyundai dealers[2]. The issue was briefed during summary judgment and summary judgment was granted for Plaintiffs, disallowing the defense. In its Order, this Court stated the general law on the issue:

> "'Impossibility of performance' refers to those factual situations, too numerous to catalog, where the purposes, for which the contract was made, have, on one side, become impossible to perform." *Crown Ice Mach. Leasing Co. v. Sam Senter Farms, Inc.*, 174 So. 2d 614, 617 (Fla. 2d DCA 1965). "'[I]f knowledge of the facts making performance impossible were available to the promisor' before execution of the contract, the defense of

---

[2] Setting aside the legal argument, this position is factually inaccurate as well.  The DHSMV did not make (or order) HMA to create Genesis, establish the Genesis line-make, obtain a license or offer Dealer Agreements. Instead, the DHSMV simply said that if HMA established Genesis in the way that it did, then it had to follow existing law. HMA could have established a luxury line-make in many different ways, but it chose to go down this route.

impossibility is not available." *Harvey v. Lake Buena Vista Resort, LLC*, 306 F. App'x 471, 472–73 (11th Cir. 2009) (quoting *Shore Inv. Co. v. Hotel Trinidad, Inc.*, 29 So. 2d 696, 697 (Fla. 1947)). "In other words, a legal impossibility exists only if the supervening event is not foreseeable." *Id.* at 473; *see also Cook v. Deltona Corp.*, 753 F.2d 1552, 1558 (11th Cir. 1985) ("[T]he most profitable approach to an impossibility claim is not to pass on the relative difficulty caused by a supervening event, but to ask whether that supervening event so radically altered the world in which the parties were expected to fulfill their promises that it is unwise to hold them to the bargain."). "Because of the central importance placed upon the enforceability of contracts in our culture, the defense of impossibility . . . must therefore be applied with great caution if the contingency was foreseeable at the inception of the agreement." *Ferguson v. Ferguson*, 54 So. 3d 553, 556 (Fla. 3d DCA 2011).

ECF 197 at 16-17. The Court noted that the subject laws and regulations had not changed between the time of contracting and when performance allegedly became impossible, and that the law was "applied in an entirely foreseeable manner". ECF 197 at 17.

HMA's argument for impossibility is, at best, reliant on an adverse application of the subject law and misses the mark. HMA knew of the applicable laws and regulations in question as those laws were on the books at the time of contracting.  Mr. Hernandez, director of franchise relations and dealer law for HMA, testified that it is his team's job to provide advice and counsel to both HMA and GMA regarding compliance with franchise laws across the nation. Tr. Vol. IX at 37:10-18. A reliance on adverse application of law that existed at the time of contracting does not allow HMA to avail itself of the doctrine of impossibility. The caselaw states that even routine changes to existing law are insufficient to support the doctrine of impossibility – in light of this, it is hard to see how a reliance on an adverse application of an unchanged law would fare any better. *See Harvey v. Lake Buena Vista Resort, LLC*, 306 Fed. Appx. 471, 473 (11th Cir. 2009) (holding that routine changes in building codes and delays attributable to the interpretations thereof were not sufficient to invoke the doctrine of impossibility;  *Cook v. Deltona Corp.*, 753 F.2d 1552,

1558 (holding that a significant increase in regulation between the time of contracting and the time for performance did not support an impossibility defense where the party to be bound was aware that changes could happen and that permits were not guaranteed to be issued).

HMA was aware of the law at the time of contracting, the law did not change and the law was applied in a foreseeable manner. Thus, partial summary judgment on impossibility was proper.

### B. The Court's Evidentiary Decisions Were Proper.

HMA argues that an essential part of its defense was to claim that if open points were created by the March 2018 announcement, its offer of Genesis dealerships to all Hyundai dealers "walked back" the open points, and eliminated any open points that existed. HMA contends this argument was about the meaning of the contract, and distinct from its impossibility defense, yet it could not present its case to the jury because the Court incorrectly ruled that certain evidence related to the affirmative defense of impossibility. As a result, HMA claims it was severely prejudiced.

This argument is just a repackaging of impossibility. HMA argues that it is legally entitled to the affirmative defense of impossibility with respect to the preconditions to the 2009 Agreement, even if it cannot avail itself of the defense as to the breach claims. This is inconsistent with authority on the subject, and HMA has failed to cite to any authority which supports its position. HMA cites to *Perry*, arguing that evidence's relevance to the dismissed defense does not preclude it from being independently relevant to another claim or defense. *See Perry v. Schumacher Grp. of La.*, 2020 WL 6938391, at *2 (M.D. Fla. Nov. 25, 2020). No one is in disagreement about this. The Court, in a sidebar, stated

that a witness can provide testimony relevant to multiple subjects and that it would allow testimony on those other subjects. Tr. Vol. VII at 93:7-15. For this very reason, the Court partially denied Plaintiff's Omnibus Motion in Limine. *See* ECF 237 at 8 (denying Plaintiff's motion to exclude evidence relating to impossibility, but warning Defendants that should they "fail to heed this warning, Plaintiffs can and should renew their objections at trial."). Defendants were also explicitly warned that they were not "permitted to attempt to relitigate the issue of impossibility at trial or to use the evidence to imply such a defense to the jury in contravention of this Court's Order." *Id.*

The Court only excluded evidence that would go towards impossibility, because HMA repeatedly sought to elicit information *about impossibility*. HMA was not barred from asking about open points, the licensing process, the dates that Genesis became licensed or other subjects, but it was barred from asking questions in a way that blatantly pointed to impossibility. *See* Tr. Vol. II at 150:7-10; 150:10-152:8[3]; Tr. Vol. IV at 106:15-25; Tr. Vol. V at 38:16-40:10; Tr. Vol. VII at 92:12-19. In fact, counsel for HMA was repeatedly permitted to ask witnesses, specifically Erwin Raphael, what he "could not" do and what events did not happen. *See* Tr. Vol. IV at 106:19-21; 107:11-108:12; 109:18-110:10; Vol. V at 14:1-11; 15:2-6. While some of the questions and testimony which were prevented or excluded *may* have had relevance to other subjects, they also pointed directly at impossibility (or outright asked about impossibility) and were properly excluded as they were thus *highly* prejudicial to Plaintiffs. Even if HMA's counsel did not intend to elicit such

---

[3] While HMA contends that this question was relevant to open points, the question was effectively asking why something could not be done. During this sidebar, the Court advised counsel for HMA that he could ask questions about open points – he just could not delve into impossibility. Tr. Vol. II at 151:12-14.

responses regarding impossibility or frustration of purpose, the record clearly shows that responses on such were being provided by the witnesses. *See* Tr. Vol. V at 36:10-12 (Erwin Raphael testifying "[w]e had a lot of different perspectives. We had objections from -- from dealers across the country, dealer associations, and even DMVs. And it **made it almost impossible**") (emphasis added). The Court even went to far as to explain this to HMA's counsel, in one instance stating that the witness was "giving narrative answers and going off on places where he can't" and noting that the Court had told counsel to "be careful what you ask if you don't know the answer to the question." Tr. Vol. V at 40:4-7.

HMA would have the court permit it to introduce evidence to establish that it was unable to create open points, or that it dissolved any existing open points, because of the same factual circumstances which it used to argue impossibility.  Plaintiffs fail to see, as did the Court, how this does not amount to arguing for the defense of impossibility. Whether HMA was harmed by these exclusions is not legally relevant, as the exclusions were *legally proper* and HMA had been warned months before trial. Accordingly, a new trial is not warranted.

### C.  The Court's Instruction On Impossibility Does Not Warrant A New Trial.

The Court's jury instruction on impossibility was a curative instruction. The instruction was appropriate, and is not a valid reason for a new trial. These actions were taken to remedy the need for a mistrial caused by questioning from HMA's counsel which led to direct testimony on impossibility. Tr. Vol. V at 36:10-12. The Court only decided this instruction would be given *after* HMA's witnesses testified directly to impossibility – after a sidebar in which the Court warned HMA's counsel about the exact issue. Tr. Vol. V at 36:10-37:1; Tr. Vol. X at 94:13-23.  It is well settled law that a court may issue a curative

instruction to the jury to remedy the need for a mistrial. *See* Tr. Vol. X 99:11-18 (Court indicated a mistrial probably would have been granted if requested); *See also In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19MD2885, 2021 WL 5014828, at *1 (N.D. Fla. Oct. 28, 2021); *Faberlle v. City of Orlando*, No. 605CV852ORL22UAM, 2007 WL 9719109, at *4 (M.D. Fla. Sept. 4, 2007).

HMA then asked the Court, if it was maintaining the instruction on impossibility, to instruct the jury that it could still consider the Department's decision to determine if open points existed. The Court declined, noting that to do so would effectively allow impossibility to be considered. Tr. Vol. X at 97:2-100:20. The Court's action is consistent with the law. Further, as noted in HMA's Motion, the instruction still allowed the jury to consider evidence of some of the Department's actions. Def. Mot. at 21-22.

HMA repeatedly states that evidence was excluded which is relevant for purposes other than impossibility, but ignores that relevant evidence can still be properly excluded for other reasons. For example, Rule 403 of the Federal Rules of Evidence expressly allows exclusions of relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Throughout the entire trial, HMA was trying to inject evidence of impossibility, which would not only confuse the jury, but be **highly prejudicial** to Plaintiffs, as HMA legally could not avail itself of the defense of impossibility. Plaintiffs moved to exclude this evidence for these very reasons. *See* ECF 219 at 3-9. However, the Court declined to preclude such evidence in its Order on the motions in limine (ECF 237 at 8), and gave HMA leeway on questioning and ruled on individual objections as they occurred.

"To warrant a new trial based on an erroneous jury instruction, a party must establish that [a] challenged instruction was an incorrect statement of the law, and that it was probably responsible for an incorrect verdict leading to substantial injustice." *Johnson*, 484 F. Supp. 2d at 1252 (internal quotation marks omitted). HMA must establish both that the jury instruction is an incorrect statement of the law, and that it was likely the cause of an incorrect verdict. HMA has not established either. The instruction is consistent with the law, as it merely instructed the jury not to consider evidence relating to a defense which was unavailable to HMA. The instruction also **could not lead to an incorrect verdict** as the defense of impossibility was already stricken and the instruction was merely a safeguard necessitated due to HMA's questioning of its own witnesses.

### D.  The Court's Refusal to Instruct The Jury On The Concurrent Existence of Preconditions Does Not Warrant A New Trial.

The 2009 Agreement does not, by its plain language, require the three preconditions to exist concurrently. Pls.' Ex. 1 at 4; Tr. Vol. X at 85:4-86:7. The jointly proposed jury instructions in the Joint Final Pretrial Statement (ECF 228-5) do not mention or require concurrent preconditions. Defendants' Proposed Verdict Form (ECF 228-7 at 1) did not require that the preconditions exist simultaneously. Now, HMA contends that it was an error for the Court to refuse its proposed instruction (which was created after the conclusion of the evidence and differed from what was proposed to the Court in the joint pretrial statement) that the 2009 Agreement requires the three preconditions to exist concurrently. HMA contends this alleged error also warrants a new trial. Refusal to give a requested instruction will be reversed only if: "(1) the requested instruction correctly stated the law, (2) the instruction dealt with an issue properly before the jury, and (3) the failure to give the instruction resulted in prejudicial harm to the

requesting party." *Bearint ex rel. Bearint v. Dorell Juv. Grp., Inc.*, 389 F.3d 1339, 1350 (11th Cir. 2004); *Finney v. Bibb Cty. Pub. Sch.*, 201 F. App'x 671, 673 (11th Cir. 2006).

It is well settled law that contract interpretation is based, first and foremost, upon the plain language of the contract. *See Famiglio v. Famiglio*, 279 So. 3d 736, 740 (Fla. 2d DCA 2019); *Chandler v. Geico Indem. Co.*, 78 So. 3d 1293, 1300 (Fla. 2011). The agreement does not state that all of the preconditions must be satisfied concurrently, and as Judge Berger aptly stated, "[t]here's nothing in the contract that says they need to occur at the same time". Pls.' Ex. 1; Tr. Vol. X at 87:21-23.

HMA further argues that the failure to instruct the jury on its interpretation allowed Plaintiffs' counsel to mislead the jury during closing arguments. Def. Mot. at 23. HMA's counsel could have stated his view of the contract during closing, but chose not to. The Court even told HMA's counsel it was "a good argument to make before the jury". Tr. Vol. X at 86:24-25. Despite this, HMA stuck with its original strategy of arguing that all three points needed to exist before August 10, 2019, but that one precondition, open points, never existed. Tr. Vol. XI at 38:9-13; 39:5-7; 42:7:9. This is consistent with counsel for HMA's opening statements, and the rest of trial. *See* Tr. Vol. II at 35:3-10; 40:4-6; 43:14-16. During the trial, HMA never told the jury that the preconditions needed to be satisfied concurrently – it only raised the issue once, at the charge conference. The Court instructed the jury on contract interpretation. ECF 303 at 11-12. HMA must live with the case and argument presented during trial and cannot now take a "second-bite".

### E. The Court's Management of Evidence Introduced to The Record Was Proper.

The Court's management of evidence was proper. HMA points to several questions which Plaintiffs were permitted to ask, and attempts to conflate them with

similar questions its counsel asked witnesses. The questions of Mr. Bertron (Tr. Vol. VII at 102:16-19, 107:6-109:14) were properly restricted because Mr. Bertron refused to answer questions relating to his interpretation of the agreement when deposed, and thus should not be allowed to testify on the same during trial. The Court even explained that other witnesses could testify about similar issues because (1) "there wasn't an objection", and (2) the Court was not "provided anything that said … they were specifically not to answer those questions." Tr. Vol. VII at 109:2-8. For the question at 102:16-19 of Tr. Vol. VII, counsel for HMA was still permitted to ask the question he wanted. Tr. Vol. VII at 102:20-24. The questions of Mr. Hernandez that HMA points to were also restricted due to proper objections from Plaintiffs' counsel, namely due to relevance. Tr. Vol X at 11:4-8; 12:10-13:14. Finally, HMA points to an answer to one of Plaintiffs' counsel's own questions that was stricken. Tr. Vol. X at 52:2-19. Said answer was likely stricken because the answer from the witness—HMA's in-house counsel—contained irrelevant, highly prejudicial, hearsay that had no business being considered by the jury. *Id.*

HMA's counsel cannot claim that HMA was prejudiced by legally proper objections, which were sustained by the Court, or by its own failure to timely raise objections. This is especially true when Plaintiffs' objections were for the same basis raised by HMA during deposition. Simply put, HMA objected and instructed its witness not to answer questions during deposition, but then sought that same information during trial.  This is clearly impermissible and the Court correctly ruled as such. HMA has not pointed to any actual errors in the admission or rejection of evidence, let alone substantial errors, so a new trial is not warranted on these grounds. *See Long* No. CV216322FTMPAMMRM, 2018 WL 11236649, at *1.

**F.  A New Trial or Substantial Remittitur On Damages Is Unwarranted.**

A new trial is not warranted on damages. A new trial on damages "should be ordered only when the verdict is **so excessive as to shock the conscience of the court**." *Carter v. DecisionOne Corp. Through C.T. Corp. Sys.*, 122 F.3d 997, 1006 (11th Cir. 1997) (emphasis added). That standard is not met here. The jury found, based on the evidence presented, that Plaintiffs were entitled to $16 million in damages. ECF 304. HMA claims this amount is improper because Plaintiff's expert, used the incorrect "date of loss" to determine damages. HMA further argues that under Florida law, values of the loss past the date of breach are legally irrelevant. In support of this, HMA cites *Haddad*, which is inapposite because (1) it deals with the breach of a fiduciary duty, and (2) the breach was a single unauthorized withdrawal of funds, where the only loss *was the funds. See Haddad v. Rav Bahamas, Ltd.*, 589 F. Supp. 2d 1302 (S.D. Fla. 2008); *see also Cabot E. Broward 2 LLC v. Cabot*, No. 16-61218-CIV, 2018 WL 11309825, at *4 (S.D. Fla. July 26, 2018) (distinguishing the rule from *Haddad*).

As argued in Plaintiff's Response to Defendant's Motion to Exclude Supplement #2 to the Expert Report of Patrick L. Anderson (ECF 265), the rule HMA is attempting to apply here (and the same one it argued in that briefing) is not a "one size fits all" rule for damages. *See* ECF 265 at 9-10; *Lindon v. Dalton Hotel Corp.*, 49 So. 3d 299, 306 (Fla. 5th DCA 2010) (noting that rule is "subject to exceptions" and that the time of breach standard "is not an inflexible principle"). After all, the purpose of determining damages in a breach of contract case is "to place the injured party in the position it would have been in had the other party not breached the contract so as to give the aggrieved party the **benefit of its bargain**." *Katz Deli of Aventura, Inc. v. Waterways Plaza, LLC*, 183 So. 3d

374, 379 (Fla. Dist. Ct. App. 2013) (emphasis added). In circumstances such as these, where the valuation of damages is based upon an intangible right, the information used to calculate damages cannot be frozen at the time of breach because doing so would deprive Plaintiffs of the benefit of their bargain – which was essentially to obtain two additional Genesis dealerships. This is especially here because Nero's rights under the Agreement did not actually expire until August 10, 2019.

In fact, HMA's counsel questioned Plaintiffs' expert, Mr. Anderson, on this subject at trial. Mr. Anderson thoroughly explained that the "date of loss" or "date of valuation" has not changed, but that the value at those dates changed based on new information. Tr. Vol. VII at 21:2-24:2. HMA's argument also wholly ignores testimony of damages by other witnesses, including William Nero, who testified that he believed the value of the two dealerships would be "at least $30 million". Tr. Vol. II at 106:6-13; 107:2-15. The damages awarded are within the bounds of the evidence and do not "shock the conscience".

Plaintiffs' expert calculated the damage based on information readily available to HMA, and defended his calculations both during deposition and at trial. Because the information used to calculate damage measurements are not frozen at the time of the breach, and because the sum calculated by Plaintiffs' expert and affirmed by the jury verdict does not "shock the conscience", a new trial is not warranted on damages.

## <u>CONCLUSION</u>

WHEREFORE, Plaintiffs respectfully request the Court deny HMA's Renewed Motion for Judgment as a Matter of Law and Motion for New Trial.

Dated: December 7, 2021

Respectfully Submitted,

*/s/ Nicholas A. Bader*
Nicholas A. Bader (FBN 55351)
Jason T. Allen (FBN 25659)
**BASS SOX MERCER**
2822 Remington Green Circle
Tallahassee, Florida 32308
T: 850.878.6404
F: 850.942.4869
nbader@dealerlawyer.com
jallen@dealerlawyer.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 7, 2020, the foregoing was filed with the Clerk of Court using CM/ECF, which will serve a Notice of Electronic filing on all counsel of record.

*/s/ Nicholas A. Bader*
Nicholas A. Bader