**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ACTION NISSAN, INC. and WILLIAM
NERO,

   Plaintiffs,

v.            Case No. 6:18-cv-380-WWB-EJK

HYUNDAI MOTOR AMERICA and
GENESIS MOTOR AMERICA,

   Defendants.
_____/

## <u>ORDER</u>

THIS CAUSE is before the Court on Defendant Hyundai Motor America's Renewed Motion for Judgment as a Matter of Law and Motion for a New Trial (Doc. 318), Plaintiffs' Response in Opposition (Doc. 323), and Defendant's Reply (Doc. 329). For the reasons set forth below, the Motion will be denied.

## I. BACKGROUND

Plaintiff Action Nissan, Inc., doing business as Universal Hyundai, is a registered motor vehicle dealer specializing in the sale and service of Hyundai branded vehicles obtained from Defendant Hyundai Motor America LLC ("**HMA**"). Universal Hyundai is owned by Plaintiff William Nero. In 2019, Universal Hyundai entered an agreement with Defendant Genesis Motor America LLC ("**GMA**") to become an authorized dealer for Genesis products at its current business location. GMA was formed by HMA in 2016 and is the distributor of Genesis brand vehicles in the United States.

In 2006, Universal Hyundai filed a lawsuit against HMA. To resolve that lawsuit, in 2009, HMA, Universal Hyundai, and Nero entered into a Confidential Settlement

Agreement and Release ("**2009 Agreement**" or "**Agreement**"), which granted Nero a right of first refusal to be appointed as a dealer for any new luxury motor vehicle line-make established by Hyundai Motor Corporation ("**HMC**") within ten years of the effective date of the Agreement if (1) a new luxury motor vehicle line-make was established by HMC or a subsidiary thereof; (2) HMA or an entity controlled by HMA was granted rights of distribution for the new line-make in the United States; and (3) open points for the new line-make existed in an eight-county area in Florida.

GMA announced its intention to establish an independent dealership network on January 26, 2018, which would include around one hundred dealerships in key luxury markets. In response to GMA's announcement, Nero and Universal Hyundai sent letters to HMA on January 29, 2018, February 14, 2018, and February 28, 2018, seeking to exercise Nero's right of first refusal under the 2009 Agreement and requesting assurances of compliance therewith. HMA did not respond to any of these communications. On March 2, 2018, GMA sent a letter to all existing Florida Hyundai dealers with a Genesis Participation Agreement offering them an opportunity to express their interest in applying to become an authorized Genesis dealer. Along with the March 2, 2018 letter, GMA provided a list of "Initial Markets" that dealers could express interest in occupying, which included several geographic regions in Florida and the eight-county area. Thereafter, Plaintiffs filed this lawsuit on March 12, 2018, alleging that Defendants breached the 2009 Agreement by failing to offer Nero a right of first refusal and violated state and federal laws regarding automobile dealers and dealerships.

On December 19, 2017, GMA filed an application with the Florida Department of Highway Safety and Motor Vehicles ("**DHSMV**") to get distribution rights for Genesis

vehicles in Florida. On July 31, 2018, the DHSMV denied GMA's application because, among other reasons, there was an existing system of distribution for Genesis branded vehicles through current Hyundai dealers. Considering the DHSMV's denial of its first application for a distributor license, on September 24, 2018, GMA sent a letter to all Hyundai dealers in Florida giving them an option to enter a Genesis dealer agreement or accept a settlement in return for the release of any rights to a Genesis dealership. Almost all the existing Hyundai dealers in Florida, including Universal Hyundai, elected to become Genesis dealers. Accordingly, GMA submitted a new application and was granted a distributor license by the DHSMV.

On November 5, 2020, this Court entered an Order (Doc. 197) granting in part the parties' cross-motions for summary judgment as to various claims and defenses. The remaining claims were tried before a jury between September 27, 2021, and October 4, 2021. Ultimately, the jury received Plaintiffs' claims for breach of contract, breach of the implied duty of good faith and fair dealing, and anticipatory breach. At the close of trial, the jury returned a verdict in favor of Plaintiffs as to the breach of contract and breach of the implied duty of good faith and fair dealing claims and awarded Plaintiffs $16 million in damages. Because the jury found that HMA actually breached the 2009 Agreement, the jury did not return a verdict on the anticipatory breach claim. The Court entered judgment in favor of Plaintiffs, and against HMA, on October 19, 2021.

## II.   DISCUSSION

HMA seeks to renew it motion for judgment as a matter of law as to each count pursuant to Rule 50(b). In the alternative, HMA argues that it is entitled to a new trial under Rule 59(a). Each basis will be addressed in turn.

### A.    Renewed Motion for Judgment as a Matter of Law

Under Federal Rule of Civil Procedure 50, "[a] party's motion for judgment as a matter of law can be granted at the close of evidence or, if timely renewed, after the jury has returned its verdict, as long as there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party." *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007) (quotation omitted). "[I]n ruling on a party's renewed motion under Rule 50(b) after the jury has rendered a verdict, a court's sole consideration of the jury verdict is to assess whether that verdict is supported by sufficient evidence." *Id.* "In considering whether the verdict is supported by sufficient evidence, 'the court must evaluate all the evidence, together with any logical inferences, in the light most favorable to the non-moving party.'" *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) (quoting *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1560 (11th Cir. 1995)). "[I]t is the jury's task—not [the court's]—to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *Id.* (quoting *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 715 (11th Cir. 2002)).

In its Motion, HMA argues that the 2009 Agreement required that all three conditions precedent to the right of first refusal were required to have existed simultaneously at some period to support a verdict in favor of Plaintiffs. Therefore, HMA argues, because there was no evidence that an open point existed at a time when HMA also had distribution rights for a new luxury line-make, there was no evidence upon which a jury could have found in Plaintiffs' favor on any of their claims.

As an initial matter, to the extent that HMA's Motion is directed at the anticipatory breach claim, the Motion is untimely. Pursuant to Rule 50(b), "if the motion addresses a

jury issue not decided by a verdict," then the renewed motion must be filed "no later than 28 days after the jury was discharged[.]" Fed. R. Civ. P. 50(b). The jury rendered its verdict on October 4, 2021, and was discharged immediately thereafter. (Doc. 304 at 4; Doc. 307 at 102:8–103:1). Because the jury found in Plaintiffs' favor as to both the breach of contract and breach of the duty of good faith and fair dealing claims, the jury did not reach a verdict regarding liability as to Plaintiffs' anticipatory breach claim. (Doc. 304 at 1–3). Thus, as to the anticipatory breach claim, any renewed motion under Rule 50(b) was due to be filed on or before November 1, 2021. *Cf. Escribano v. Travis Cnty., Tex.*, 947 F.3d 265, 272 n.7 (5th Cir. 2020) (holding that the jury's failure to answer every question did not trigger the shorter filing time "[b]ecause the jury 'disposed[d] of all issues' necessary to reaching a verdict" (quoting Fed. R. Civ. P. 50(b) advisory committee's note to 2006 amendment)). Because the instant Motion was not filed for an additional fifteen days thereafter, HMA's arguments as to anticipatory breach are untimely and the Court will not them. *See* Fed. R. Civ. P. 6(b)(2) ("A court must not extend the time to act under Rule[] 50(b)[.]"); *Circuitronix, LLC v. Kinwong Elec. (H.K.) Co.*, 993 F.3d 1299, 1304 (11th Cir. 2021) ("The district court may not extend the 28-day window.").

Turning to the remaining claims, for which HMA's Motion is timely, Plaintiffs argue that HMA has waived its arguments because they were not raised during HMA's Rule 50(a) motion at trial. "A motion for judgment as a matter of law . . . can be renewed after trial under Rule 50(b), but a party cannot assert grounds in the renewed motion that it did not raise in the earlier motion." *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241, 1245 (11th Cir. 2001). Thus, "any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment

as a matter of law made under Rule 50(a) at the close of the evidence and prior to the case being submitted to the jury." *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir. 2004).

HMA made its Rule 50(a) motion at the close of Plaintiff's case in chief. (Doc. 290 at 72:20–73:2). At that time, HMA argued that it was entitled to a directed verdict because there was no evidence presented at trial "that there were open points created by Hyundai" or "that open points were ever established or offered to any dealers[.]" (*Id.* at 84:10–85:5). HMA did not argue that the contract required all of the conditions precedent to exist at the same time. (*Id.*). In responding to the argument, Plaintiffs' counsel stated that "as [he] underst[oo]d it . . . [HMA's] argument on the [contract] claims is that there were no open points." (*Id.* at 86:13–14). Moreover, in ruling on the oral motion, the Court explicitly stated that it was "deny[ing] the motion with regard to open points[.]" (*Id.* at 87:18–20). HMA did not object to either statement or make any effort to clarify its argument or present any additional arguments. Thus, there can be no question that the issue of contract interpretation was not expressly raised during HMA's Rule 50(a) motion at trial, a point that HMA tacitly concedes in its Reply. (Doc. 329 at 2–3).

Nevertheless, HMA argues that it either did not waive its argument or that any waiver should be excused. As an initial matter, HMA argues that it did not waive its argument because it does not "vary greatly" from the Rule 50(a) argument actually asserted at trial. Although the Court may not consider grounds first raised in a Rule 50(b) motion, "[s]trict identity of issues . . . is not required." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1243 (11th Cir. 2010); *see also Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1109 n.12 (11th Cir. 2020). "So long as [the arguments] are 'closely related,' such that opposing

counsel and the trial court may be deemed to have notice of the deficiencies asserted by the moving party," the Court may consider grounds not expressly relied on at trial. *Howard*, 605 F.3d at 1243 (quoting *Nat'l Indus., Inc. v. Sharon Steel Corp.*, 781 F.2d 1545, 1549 (11th Cir. 1986)). "Only if the old and new grounds 'vary greatly' is the district court prohibited from relying on those new grounds in setting aside the jury's verdict." *Ruckh*, 963 F.3d at 1109 n.12 (quoting *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1289 (11th Cir. 1998)).

Here, although both arguments advanced by HMA touch on issues regarding the conditions precedent to performance, the Court is not satisfied that the grounds asserted in HMA's Motion are suitably related to the argument advanced in its Rule 50(a) motion at trial. To be clear, at trial HMA only argued that Plaintiffs had failed to present sufficient evidence that one of the conditions had been met. It did not argue, however, that it had not been met when the other conditions had been met and did not, in fact, make any mention of the other conditions or any arguments regarding interpretation of the contract. Arguments regarding the sufficiency of the evidence as to one element of the contract are simply too far removed from arguments regarding the proper interpretation of the contract generally to have placed either Plaintiffs or the Court on notice of the newly raised argument. *See Johnston v. Borders*, 36 F.4th 1254, 1267–70 & n.31 (11th Cir. 2022) (holding that arguments regarding damages and absolute privilege were not sufficiently related to arguments regarding punitive damages and qualified privilege); *Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 526–28 (11th Cir. 2019) (argument that deputy lacked consent to enter the screened in porch, as curtilage of the home, varied too greatly from arguments regarding consent to enter the front door of the home); *Jaimes v. GEICO Gen.*

*Ins. Co.*, 534 F. App'x 860, 865 (11th Cir. 2013) (holding that an insurers argument that the plaintiff failed to comply with one condition of the policy was not sufficient to preserve its post-trial argument that the plaintiff failed to comply with a different condition); *see also Nat'l Indus., Inc.*, 781 F.2d at 1549 (arguments regarding loss of future profit and loss of goodwill and reputation were sufficiently closely related because both involved closely intertwined issues regarding similar forms of damages). Thus, the Court is not persuaded that HMA may avail itself of the closely related arguments exception.

HMA also argues that it preserved the issue because it was raised during the charging conference before the case was submitted to the jury. At the charging conference, held at the close of evidence but before closing arguments, HMA argued—after initially stating that it had no objection to the proposed charge—that the jury instruction regarding conditions precedent should be modified to require that the conditions "were all in existence at the same time[.]" (Doc. 297 at 83:12–17, 84:20–85:3, 86:14–23). The Court took HMA's argument under advisement but ultimately declined to modify the instruction as requested. (*Id.* at 88:3–5; Doc. 303 at 14).

The Eleventh Circuit has stated that "a Rule 50(b) argument may, in some cases, be properly preserved by an argument clearly and unambiguously raised during a charge conference." *McGinnis*, 817 F.3d at 1263. To preserve such an argument, however, "a party must 'clearly point[ ] out a claimed evidentiary deficiency to court and counsel, not by way of *conversation* or *speculation* but on the record in an unambiguous formal motion for relief.'" *Id.* at 1262 (quoting *Quinn v. Sw. Wood Prods., Inc.*, 597 F.2d 1018, 1025 (5th Cir. 1979)). Thus, an argument raised at a charge conference will only be sufficient if "although not styled as a motion for [judgment as a matter of law], [it] served the same

purpose in that it conveyed a definitive, clear objection to the presentation of the . . . question to the jury." *Softball Country Club-Atlanta v. Decatur Fed. Sav. & Loan Ass'n*, 121 F.3d 649, 656 (11th Cir. 1997); *see also Splitt v. Deltona Corp.*, 662 F.2d 1142, 1144–45 (5th Cir. 1981) (holding that an argument raised during a charging conference, but not in a motion for directed verdict, was preserved where counsel "argued strenuously against a jury instruction that would permit a finding of punitive damages" and the trial court implicitly recognized that counsel was making a legal argument akin to a request for a directed verdict).

Although the argument now advanced was expressly raised by HMA at the charge conference, the Court is not convinced that HMA did enough to bring the argument within the very narrow exception contemplated by the Eleventh Circuit. To be clear, HMA argued that language needed to be added to the instruction to guide the jury, but HMA never argued that the issue should not be submitted to the jury or that there was insufficient evidence to send the question to the jury. Even when the Court told counsel that it was "a good argument to make before the jury," counsel did not argue that there was insufficient evidence, under HMA's reading of the agreement, to submit the issue to the jury for determination. (Doc. 297 at 86:24–87:17). Counsel for Plaintiffs further stated that HMA was actually asking the Court to make "a legal determination about the contract *and then send it back to the jury*." (*Id.* at 89:4–6). A contention that HMA did not seek to refute or correct. Thus, this Court is not satisfied that HMA conveyed a clear objection to submitting the question to the jury to trigger the narrow exception for arguments made during charge conferences.

Lastly, HMA argues that the Court must still review the jury's verdict for plain error, even if HMA waived its argument. However, the Eleventh Circuit has held that plain error review applies when "a party altogether fails to assert a Rule 50(a) motion on *any* grounds[.]" *McGinnis*, 817 F.3d at 1260 n.13; *see also Romero v. Razzle Dazzle Barbershop, Inc.*, 793 F. App'x 853, 856 (11th Cir. 2019) ("If a party fails to file a motion under Rule 50(a) before the case is submitted to the jury, the 'renewed' motion under Rule 50(b) can only be granted if plain error is shown."); *Sims' Crane Serv., Inc. v. Ideal Steel Prods., Inc.*, 800 F.2d 1553, 1557 (11th Cir. 1986) ("A lawyer who never moves for directed verdict, given the wording of Rule 50(b) and the clear case law regarding the effect of such a decision—regardless of the reasons for such a decision—must realize that a subsequent motion for jnov can be granted only if plain error can be proven."). Here, because there is no question that HMA made a motion under Rule 50(a) on other grounds, it does not appear that the limited exception for plain error review applies in this case. Moreover, HMA's argument that plain error occurred in this case is limited to one conclusory sentence without any citation to the record or further elaboration. Thus, HMA has waived its argument. *W. Sur. Co. v. Steuerwald*, No. 16-61815-CV, 2017 WL 5248499, at *2 (S.D. Fla. Jan. 17, 2017) ("It is axiomatic that arguments not supported and properly developed are deemed waived."); *see also U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (noting that the court need not consider "perfunctory and underdeveloped" arguments and that such arguments are waived); *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

Having determined that HMA did not preserve the argument now advanced in its Motion, the Court need not address the merits of its argument. Nevertheless, even if HMA

had not waived its argument, a directed verdict would not be proper in this case. HMA argues that the 2009 Agreement required that all three preconditions to the grant of a first of right refusal were required to have existed at the same time—i.e., open points had to exist at the same time that HMA had created a new luxury line-make and had distribution rights for the same in accordance with the 2009 Agreement. Based on this interpretation, HMA argues that there was no evidence that a new luxury line-make or distribution rights existed prior to October 30, 2018, when the DHSMV approved the Genesis license, and there is no evidence that open points continued to exist at that time.

Even if this Court were to accept HMA's interpretation of the contract as correct, HMA's argument relies on the jury to interpret the 2009 Agreement to find that the existence of a line-make and distribution rights were contingent on the actions of the DHSMV, which, as this Court pointed out in its November 5, 2020 Order (Doc. 197) on the parties' cross-motions for summary judgment, is only one reasonable interpretation of the ambiguous terms in the Agreement. (*Id.* at 6–9). Rather, under the interpretations of those terms offered by Plaintiffs, as set forth in the Court's instructions to the jury, a reasonable jury could have found: (1) that a line-make existed at any time after Hyundai Motor Company made the decision to sell Genesis vehicles as its own brand of vehicles, independent of the Hyundai name, and (2) that a subsidiary of HMA had distribution rights in the United States once they were granted by its parent corporation, regardless of the existence of the right to distribute vehicles in Florida. (Doc. 303 at 11). First, there is evidence from multiple witnesses that a distinct Genesis brand existed prior to March 2018. For example, there was testimony by multiple witnesses and evidence introduced at trial that a luxury brand was being created as early as 2007, that the Genesis brand

existed prior to 2014 and was announced as a separate brand in 2015, that HMA hired someone to "launch and lead the Genesis brand in the United States" in 2016 or early 2017, that the GMA entity was created in November 2016, that GMA viewed Genesis as a brand separate from Hyundai no later than 2018, and in January 2018 HMA and GMA issued a national press release identifying Genesis as "a global luxury automotive brand." (Doc. 280 at 42:10–12, 46:23–47:6, 48:4–17, 49:23–50:5, 86:18–21, 107:12–18; Doc. 282 at 16:13–24, 18:8–11, 26:1–10, 43:9–15; Doc. 305-2 at 2; Doc. 305-12 at 1, 4).

As to the latter, there was testimony that Hyundai Motor Company authorized GMA to distribute Genesis vehicles in the United States in 2018, and roughly nineteen states did not require a distributor's license to be issued by the state. (Doc. 285 at 50:9–17; Doc. 297 at 21:3–14). Additionally, in January 2018, HMA and GMA issued a press release stating that GMA "distributes, markets and services Genesis vehicles in the United States[,]" (Doc. 305-2 at 2), and in March 2018, offered existing Hyundai dealers a Settlement and Release Agreement in which HMA and GMA were defined as the "Distributor Parties" for the Genesis line, (Doc. 305-7 at 4).

Finally, HMA concedes for purposes of its motion that there was sufficient evidence from which a reasonable jury could find that open points existed between March and May 2018. (Doc. 318 at 13 & n.4). Accordingly, even if the 2009 Agreement required all three conditions precedent to exist simultaneously, there was sufficient evidence from which a reasonable jury could have found that those conditions existed on or near March 2018. Therefore, HMA's Motion is also denied on the merits.

**B.     Motion for New Trial**

In the alternative, HMA argues that this Court must grant a new trial. After a jury trial, a district court may grant a request for a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "A losing party may also move for a new trial . . . on the grounds that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair . . . and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *McGinnis*, 817 F.3d at 1254 (quotation omitted). "When ruling on a motion for a new trial, a trial judge must determine if in his opinion, the verdict is against the clear weight of the evidence . . . or will result in a miscarriage of justice[.]" *Ins. Co. of N. Am. v. Valente*, 933 F.2d 921, 922–23 (11th Cir. 1991) (quotation omitted). "[A] judgment should not be set aside merely because the losing party can probably present a better case on another trial." *George v. GTE Directories Corp.*, 195 F.R.D. 696, 701 (M.D. Fla. 2000) (quotation omitted). Additionally, "new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Valente*, 933 F.2d 923.

First, HMA argues that the Court should grant a new trial because the Court erred in granting summary judgment in favor of Plaintiffs as to HMA's impossibility defense. In the November 5, 2020 Order (Doc. 197) on the parties' cross-motions for summary judgment, this Court held that the doctrine of impossibility was unavailable in this case because adverse rulings by the DHSMV, including the ruling that HMA argues rendered performance impossible, were foreseeable at the time of contracting. (*Id.* at 16–18). HMA

argues, for the first time, that material issues of fact precluded summary judgment as to the issue of foreseeability. As an initial matter, to the extent that HMA's Motion is brought under Rule 59(a), the Motion is not proper because the issue was resolved at summary judgment, not trial. *See Jackson v. Hartford Life & Accident Ins. Co.*, 543 F. App'x 977, 979 (11th Cir. 2013); *Shaw v. Liberty Mut. Fire Ins. Co.*, No. 6:15-cv-686-Orl, 2016 WL 7228754, at *2 (M.D. Fla. Apr. 25, 2016). To the extent the Motion is instead a motion for reconsideration pursuant to Rule 59(e), HMA seeks to raise new arguments not asserted in its motion for summary judgment or response to Plaintiffs' motion, to request relief that it previously argued against, or to relitigate matters already decided by this Court. It is without question that mere disagreement with the Court's holding is not a proper basis for reconsideration. *See Jackson*, 543 F. App'x at 980 ("[A] litigant 'cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.'" (quoting *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005)); *Local Access, LLC v. Peerless Network, Inc.*, 222 F. Supp. 3d 1113, 1115 (M.D. Fla. 2016) ("It is wholly inappropriate in a motion for reconsideration to relitigate the merits of the case, to raise new arguments which should have been raised in previous briefing, or to vent dissatisfaction with the Court's reasoning." (quotation omitted)). Therefore, HMA's first basis for new trial will be denied.[1]

---

[1] The Court also notes that even if the issue had proceeded to trial, HMA's argument that the adverse application of the licensing law in Florida was not reasonably foreseeable at the time of contracting was unequivocally refuted by its own witness. Specifically, David Zuchowski, who approved the 2009 Agreement on behalf of HMA, testified that in reviewing the 2009 Agreement he "thought [HMA] would have a legal battle getting approval for the Genesis name because it was already out in the market[,]" and "it's very difficult to take something away from dealers once they have it already." (Doc. 280 at 54:19–55:14, 64:9–14, 84:11–85:10). Thus, not only was the possibility of an adverse decision foreseeable, but it was also in fact foreseen at the time of contracting.

Second, HMA argues that the Court erred in a number of evidentiary rulings, which HMA argues prevented it from effectively presenting its defense that the actions of the DHSMV closed any open points that had previously existed. HMA specifically argues that the following rulings were prejudicial to its defense: (1) prohibiting it from asking Nero if he was aware that the DHSMV required every existing Hyundai dealer to be offered a Genesis franchise as a condition of being granted a distributor license; (2) prohibiting HMA from asking GMA's former CEO why the March 2018 plan was abandoned and GMA's response to the DHSMV initial license denial; and (3) prohibiting HMA from asking the DHSMV's representative why she denied GMA's first license application.

"A new trial is warranted for an evidentiary error 'only where an error in admitting or excluding evidence has caused substantial prejudice to the affected party (or, stated somewhat differently, affected the party's 'substantial rights' or resulted in 'substantial injustice').'" *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19md2885, 2021 WL 4269927, at *1 (N.D. Fla. Aug. 9, 2021) (quoting *Caradigm USA LLC v. PruittHealth, Inc.*, 964 F.3d 1259, 1274 (11th Cir. 2020)). Thus, to be granted a new trial on this basis, HMA must show both that (1) the challenged rulings were erroneous and (2) that the error caused substantial prejudice. As to the former, HMA argues that the Court erred in excluding or prohibiting this testimony because it was relevant to defenses other than impossibility. As set forth in this Court's June 25, 2021 Order (Doc. 237), the Court does not disagree that such testimony and evidence had potential relevance beyond the denied impossibility defense, (*id.* at 7–8), rulings that were reiterated again several times at trial, (*see, e.g.*, Doc. 290 at 92:12–93:15). Nevertheless, it is axiomatic that simply because evidence or testimony might be relevant does not mean that it is admissible. Rather,

pursuant to Federal Rule of Evidence 403 "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." In each of the cited evidentiary rulings in HMA's Motion, the Court allowed HMA to ask questions regarding the existence of open points but prohibited counsel from asking questions or eliciting testimony that implied that HMA did not comply with the 2009 Agreement because the actions and decision of the DHSMV prevented it from doing so. Even if this testimony has some relevance to proper defenses, any relevance of the testimony was or would have been substantially outweighed by prejudice to Plaintiffs, confusing the issues by attempting to introduce a legally insufficient affirmative defense, and misleading the jury as to the issues properly to be resolved. Accordingly, the Court finds that HMA has not shown any legal error with respect to the rulings and its second basis for a new trial will also be denied.

Third, HMA argues that the Court's curative instruction on the impossibility doctrine misled the jury and prejudiced HMA. After a clear violation of this Court's pretrial orders regarding the impossibility defense that led to a witness giving testimony that performance was "almost impossible," the Court determined that Plaintiffs were entitled to a curative instruction that the defense was unavailable. (Doc. 285 at 34:14–37:1). Consequently, the Court instructed the jury "that Defendants cannot rely on the impossibility defense in this case" and the jury was "to disregard any testimony or evidence presented by Defendants that argues or implies that it was legally impossible for them to offer Plaintiffs one or more rights of first refusal under the Agreement as a result of the actions of the [DHSMV]." (Doc. 303 at 18). HMA argues that because the Court failed to explain that the

jury could consider the evidence for other reasons, the instruction did not accurately reflect the law and misled the jury.

"To warrant a new trial based on an erroneous jury instruction, a party must establish that [a] challenged instruction was an incorrect statement of the law, and that it was probably responsible for an incorrect verdict leading to substantial injustice." *Johnson v. Clark*, 484 F. Supp. 2d 1242, 1252 (M.D. Fla. 2007) (quotation omitted); *see also United States v. Bradford*, 748 F. App'x 217, 221 (11th Cir. 2018) ("We review a jury instruction deferentially. However, we should grant a new trial if the instructions did not accurately reflect the law in such a way that we are left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." (quotation omitted)); *Davis v. Fla. Agency of Health Care Admin.*, 612 F. App'x 983, 984 (11th Cir. 2015). In its Motion, HMA makes only a conclusory allegation that the instruction did not accurately state the law and fails to cite any legal authority in support of its argument. This Court declines to consider such perfunctory and unsupported arguments. *U.S. Steel Corp.*, 495 F.3d at 1287 n.13; *Resolution Tr. Corp.*, 43 F.3d at 599. Having reviewed the instruction and the arguments advanced by HMA at the charging conference, this Court is satisfied that the impossibility instruction properly stated the law and that the jury was properly guided in its deliberations in this case. Therefore, HMA's third assignment of error will also be denied.

Fourth, HMA argues that it is entitled to a new trial because the Court refused to instruct the jury that the 2009 Agreement required all conditions precedent to exist at the same time. As relevant, the Court's instruction to the jury read: "Plaintiffs must prove that all three conditions existed on or before August 10, 2019." (Doc. 303 at 14). "A refusal to

give a requested jury instruction amounts to an abuse of discretion when '(1) the requested instruction correctly stated the law, (2) the instruction dealt with an issue properly before the jury, and (3) the failure to give the instruction resulted in prejudicial harm to the requesting party.'" *Brink v. Direct Gen. Ins. Co.*, 38 F.4th 917, 923 (11th Cir. 2022) (quoting *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1309 (11th Cir. 2013)). Even assuming that HMA's interpretation of the 2009 Agreement is correct, the Court is not satisfied that HMA suffered any prejudicial harm as a result of the instruction. As an initial matter, the Court neither instructed the jury that the conditions must exist concurrently nor that they need not exist concurrently. Rather, the instruction left room for the parties to argue their desired interpretation to the jury, which, as HMA concedes, both parties did. (Doc. 318 at 24; Doc. 329 at 5). Furthermore, as set forth above, even under HMA's interpretation of the 2009 Agreement, the great weight of the evidence supports a finding that all three conditions precedent did in fact exist simultaneously on or about March 2018. *See Sabal Trial Transmission, LLC v. 18.27 Acres of Land in Levy Cnty.*, 824 F. App'x 621, 626 (11th Cir. 2020) (holding that the movant failed to show prejudice where there was no reason to believe that a different instruction "would have caused the jury to return a different verdict"); *ADT LLC v. Alarm Prot. Tech. Fla., LLC*, 646 F. App'x 781, 786 (11th Cir. 2016) (holding that the failure to give an instruction did not prejudice the requesting party because it did not bar the jury from considering the party's theory). HMA's fourth assignment of error is without merit.

Fifth, HMA argues that the Court erred in preventing HMA from offering parol evidence as to the meaning of the terms of the 2009 Agreement. In support of its argument, HMA provides a string of citations to the record without supporting argument

as to how each—or frankly any—of the rulings were erroneous and then makes a conclusory statement that the rulings were unfairly prejudicial. HMA's arguments are perfunctory and do not merit consideration by this Court. *See U.S. Steel Corp.*, 495 F.3d at 1287 n.13; *Resolution Tr. Corp.*, 43 F.3d at 599. Nevertheless, having reviewed the cited portions of the transcript and considering the record in this case, the Court is not satisfied that the noted rulings were flawed or that HMA was in any way prevented from eliciting testimony and presenting its theory of the definitions of the relevant portions of the 2009 Agreement that were actually at issue in this case to the jury. Accordingly, HMA has also failed to show that it is entitled to a new trial on these grounds.

Finally, HMA argues that the Court should grant a new trial as to damages or order remittitur because there is no record evidence supporting the sum awarded by the jury. Specifically, HMA argues that the record fails to contain any evidence that the damages were $16 million as of the date of breach. "A new trial for excessive damages should be ordered only when 'the verdict is so excessive as to shock the conscience of the court.'" *Long v. E. Coast Waffles, Inc.*, 762 F. App'x 869, 872 (11th Cir. 2019) (quoting *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1447 (11th Cir. 1985)). "In a diversity action, we look to state law—Florida law here—to assess whether a verdict is excessive[.]" *Id.* (citation omitted).

At trial, Plaintiffs' expert testified that as of December 2019 or January 1, 2020, the value of the two dealerships was between $11.8 million and $16.4 million, using various valuation methods and excluding the value of the real estate and inventory of those dealerships. (Doc. 287 at 45:18–46:16, 94:3–9; Doc. 290 at 20:24–21:1, 21:22–22:6). Additionally, Nero testified that he believed the dealerships were worth at least $30

million, without specifying during what time frame that valuation was made. (Doc. 277 at 106:6–17). Nevertheless, HMA argues that these opinions cannot support the jury's award because they do not offer the value at the time of breach. As an initial matter, contrary to HMA's argument, the transcript fails to show that Nero's valuation was not based on the time of breach as neither side asked him to clarify his date of valuation. On this basis alone, HMA's Motion fails to show that the record contains no evidence supporting the jury's award.

Moreover, HMA's argument that damages must be set on the date of breach is too narrow in this case. As Plaintiffs correctly note, the rule that contract damages are measured as of the date of the breach "is subject to exceptions" and "is not an inflexible principle[.]" *Lindon v. Dalton Hotel Corp.*, 49 So. 3d 299, 306 (Fla. 5th DCA 2010). This is because "[i]t is well-settled that the purpose of damages is to restore an injured party to the same position that he would have been in had the other party not breached the contract." *Id.* at 305. Here, the Genesis line-make was in its infancy when the breach occurred, and it was not clear when it would be introduced to the market in Florida. Additionally, HMA breached the 2009 Agreement when it failed to give Plaintiffs the bargained for right to open two new dealerships, but on the date that the breach occurred, there is no question that Plaintiffs could not have spontaneously opened two locations and began selling cars. Rather, if HMA had not breached the 2009 Agreement, Plaintiffs would have started the process of opening two dealerships at some date in the future, perhaps in December 2019. Therefore, the date at which Plaintiffs would have realized the benefit of their bargain in this case does not coincide with the date of breach, making it unfair to freeze the damages calculation to that date. Thus, contrary to HMA's argument,

the calculation of damages in this case is less than precise and requires a flexible approach in setting the valuation date. This Court does not find that a valuation date in December 2019 or January 2020 is contrary to Florida law. Therefore, HMA's final basis for new trial will also be denied.

## III.   CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** that Defendant Hyundai Motor America's Renewed Motion for Judgment as a Matter of Law and Motion for a New Trial (Doc. 318) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on August 22, 2022.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record